| 50 | 277 |
| 51 | 553 |

TECUMSEH NATIONAL BANK, APPELLEE, V. JAMES D. RUS-
SELL ET AL., APPELLANTS.

FILED JANUARY 7, 1897.   No. 6948.

1. **Constructive Trust:** BANK STOCK. The cashier of a bank used the
bank's funds to purchase stock in another bank. *Held,* That a
court of equity would charge the stock with a trust in favor of
the bank whose funds were wrongfully used to purchase it.

2. ———: ———: BONA FIDE PURCHASER. A third person claimed the
stock by purchase from the cashier. Evidence set out in opinion
*held* not to show that he was an innocent purchaser for value.

3. **Corporations:** STOCK: COLLATERAL SECURITY: CONTRACTS: CAN-
CELLATION. Stock in a bank was issued to A, who pledged it as
collateral security to a loan procured from another bank. The
bank issuing the stock accepted a surrender of the certificate and
issued a new one in its place to the cashier of the bank. *Held,*
That it thereby waived any right it might have had to rescind its
contract with the original holder and cancel the stock on the
ground of fraud in its procurement.

APPEAL from the district court of Johnson county.
Heard below before BABCOCK, J.   *Affirmed.*

*T. Appelget, J. Hall Hitchcock,* and *Reese & Gilkeson,* for
appellants.

*John H. Ames* and *S. P. Davidson,* for appellee.

Irvine, C.

The First National Bank of Sterling had issued to James D. Russell its certificate for fifty shares of its capital stock of the par value of $5,000. Russell had been a member of the firm of Russell & Holmes, bankers at Tecumseh. The plaintiff, the First National Bank of Tecumseh, had succeeded to some extent to the business of Russell & Holmes, but the last named firm remained in existence for the purpose, at least, of closing out its late business. Russell & Holmes obtained a loan of $5,000 from the Schuster-Hax National Bank of St. Joseph, Missouri, and pledged as security Russell's stock in the Sterling bank. The pledge was made by Russell's signing a blank assignment indorsed on the certificate and delivering it to the Schuster-Hax bank. The Schuster-Hax bank sent the certificate to the Sterling bank, caused the transfer to be entered, and the Sterling bank issued a new certificate in the name of S. A. Walker, who was cashier of the Schuster-Hax bank. The Russell & Holmes note to the Schuster-Hax bank was paid in installments, the last payment having been made February 15, 1892. This suit was begun by the Tecumseh National Bank, which alleged in its petition substantially the foregoing facts; and further, that the Russell & Holmes note to the Schuster-Hax bank had been paid out of the money of the Tecumseh National Bank by Russell & Holmes and by George D. Bennett, the cashier of the Tecumseh National Bank, at the request of Russell, and that the moneys of the Tecumseh National Bank had been wrongfully appropriated for that purpose without the consent or knowledge of its directors. The Tecumseh National Bank on these averments prayed for an order requiring the surrender of the certificate to the Tecumseh National Bank and for its sale in payment of the amount so used. Russell & Holmes answered alleging that their debt to the Schuster-Hax National Bank had been paid by Bennett at their request, and that in consideration of his pay-

ment of that debt they had sold to him the certificate. Bennett answered that he had paid the debt by drafts drawn by him as cashier on the funds of the Tecumseh National Bank, but that on the following day he repaid said sum; that Russell & Holmes had sold him the stock certificate and that he had thereafter, for a valuable consideration, sold the same to D. R. Bush. Bush intervened, and alleged, among other things, that he had purchased for value said certificate, and prayed that he be decreed to be the owner thereof. The First National Bank of Sterling answered alleging that Russell had procured the original certificate to be issued to him by false and fraudulent representations, and asked that it be surrendered for cancellation. The court found for the plaintiff and adjudged the ownership of the stock to be in the Tecumseh National Bank. It will be observed that three claims were asserted to the stock: First, that of the plaintiff derived through the alleged wrongful use of its funds by Bennett, its cashier, to pay the debt to the Schuster-Hax bank, to secure which Russell & Holmes had pledged the stock; second, the claim of Bush derived through an alleged purchase from Bennett, it being claimed that Bennett had derived title by purchase from Russell in consideration of his paying the Schuster-Hax note; third, the claim of the bank of Sterling, which issued the stock, that it was obtained in the first place fraudulently, and should therefore be canceled.

The general principles of equity jurisprudence discussed in the briefs, are, for the most part, well settled and call for no extended discussion. Such difficulty as lies in the case arises in the application of established principles to the somewhat complicated state of facts presented by the record. The theory of the plaintiff seems to be that by virtue of the payment of the Schuster-Hax notes out of its funds, it became entitled to be subrogated to the rights of the Schuster-Hax bank derived from the pledge of the stock to it. It is contended by Bush that no right to subrogation is established, because

courts of equity only apply the doctrine of subrogation in two .cases: First, in pursuance of an agreement of the parties to that effect; second, where the person paying the debt is legally obligated therefor, or where he is compelled to pay it to protect his own rights. It may be conceded that these propositions are correct, but Bush claims through Bennett, and Bennett claims through a contract of purchase whereby he became entitled to the stock in consideration of his paying the Schuster-Hax note. It is proved beyond controversy that Bennett, at this time, was the cashier of the Tecumseh bank and that he paid the note by means of checks and drafts drawn by him as cashier against the funds of that bank. The bank alleges that such funds were wrongfully and without its consent used for that purpose. This allegation stands practically admitted. It is met merely by the claim that Bennett replaced the money so drawn the following day. To state the evidence on this issue would unnecessarily complicate the case. Suffice it to say that we are satisfied that the finding of the trial court in favor of the plaintiff on this issue is sustained by the evidence, and it must be accepted not only that the Schuster-Hax note was paid from funds of the Tecumseh National Bank, but that that bank has not received repayment thereof. This branch of the case may then be simplified as follows: Bennett, the cashier, and in a sense the trustee of the Tecumseh bank, uses its funds for the purpose of purchasing Russell's stock in the Sterling bank. The legal title to the stock thereby passed to Bennett, but it having been purchased by a trustee with trust funds unlawfully used for that purpose, the *cestui que trust* may follow its funds. A court of equity, as long as they can be followed, will continue the trust. In opposition to this view Bush cites 1 Morse, Banking, sec. 173*a*, where it is said: "If the cashier embezzles funds of the bank and invests them, a court of chancery has no power to fasten a trust upon the investment, and to declare the cashier to be a trustee, holding what he has purchased in trust for the bank.

The mere fact that the cashier obtained the means of purchasing by a theft from the corporate funds, provided that he actually made the purchase in his own name and on his own account, does not create such a case of implied or resulting trust as to give jurisdiction to a court of equity for the purpose of taking possession of the purchased property and ordering that indemnification be made from it to the bank." The sole authority cited in support of that statement is *Pascoag Bank v. Hunt*, 3 Edw. Ch. [N. Y.], 583. While that case fairly supports the statement, it is directly contrary to the ruling of the same vice chancellor in *Bank of America v. Pollock*, 4 Edw. Ch. [N. Y.], 215, and we may add that we deem it directly opposed to the well settled principles governing similar cases. That the cashier of a bank is a trustee of its funds in his possession and by virtue of his office will hardly be contested, and that when a trustee uses trust funds to purchase other property the *cestui que trust* may, upon tracing the fund into that property, charge the trust upon the property so purchased, is now an equitable truism. We think, therefore, that the plaintiff made out such a case as to justify the finding in its favor, and to justify the decree rendered, unless one of the other parties showed a superior right.

Bush claimed to be a purchaser for value without notice of any rights on the part of the Tecumseh bank. But we do not think that he established this by proof. For reasons not necessary here to detail, the Schuster-Hax bank had refused to surrender the certificate at the time Bennett paid the note. Bush claims that he was the owner of a certificate of deposit in the former bank of Russell & Holmes; that in January, 1892, he made a contract with Russell whereby he was to surrender this certificate and accept in lieu thereof the stock certificate in controversy together with other collateral. He was then informed that the stock certificate had been pledged to the Schuster-Hax bank. He has not surrendered his certificate of deposit, so that he has parted with no portion

of the consideration of this agreement and is not a purchaser for value. Nor do we think he is a purchaser without notice. He now claims ownership by virtue of a written assignment, dated February 16, 1892, from Russell to Bennett, and one dated the following September, from Bennett to Bush. His transaction was with Russell. He knew the stock certificate was then held in pledge by the Schuster-Hax bank. The fact that he had to derive title through Bennett was sufficient at least to arouse suspicion, and in addition to this, the certificate was not produced, and both written assignments recited that the Schuster-Hax bank was still holding it, notwithstanding that the debt for which it had been pledged had been paid. We think these circumstances were sufficient to put him on inquiry which, if made, would have disclosed the controversy as to the ownership of the certificate. For these reasons his claim is not superior to that of Russell himself.

The case of the First National Bank of Sterling is based on the theory that Russell had been a stockholder in a bank whose assets the Sterling bank had bought and whose liabilities it had assumed; that among the assets so acquired was a note made by Russell; that the understanding was that should the assets of the former bank prove sufficient, stock would be issued to its stockholders by the bank of Sterling to represent the excess of assets so acquired; that the Sterling bank had issued the stock to Russell in consideration of his pledging collateral notes to secure his note held by that bank; that he had misrepresented the value of the collateral. Whether or not this is true we need not inquire, because the Sterling bank had recognized Russell's transfer of the stock to the Schuster-Hax bank by accepting a surrender of the certificate and issuing a new certificate to the cashier of the Schuster-Hax bank. It would also appear that the Sterling bank had elected to ratify the transaction by reducing its claim against Russell to a personal judgment. It had certainly waived any right to rescind the

contract and cancel the stock.   The decree of the district
court is in all things

AFFIRMED.