CHICAGO LUMBER COMPANY, APPELLEE, v. FLORENCE M. BANCROFT ET AL., APPELLEES, IMPLEADED WITH LEXINGTON BANK, APPELLANT.

FILED MARCH 19, 1902. No. 10,928.

1. **Unchallenged Finding of Fact.** The unchallenged findings of fact by a referee, when confirmed by the court, are binding on the party against whom they operate, and from the legal consequences flowing therefrom he can not escape.

2. **Usury.** Where a debtor executes a note and mortgage for a loan of money at a lawful rate of interest, and, at its maturity, enters into a new contract with the lender for a further extension of the loan, which is tainted with the vice of usury, and the lender, by agreement, retains the note and mortgage as collateral security to the usurious contract, in a suit to enforce the mortgage security the lender is restricted in his recovery to the amount due on the indebtedness at the time of making the usurious contract, after which all interest is, by force of the statute, forfeited.

APPEAL from the district court for Dawson county. Heard below before SULLIVAN, J. *Affirmed.*

*Henry D. Rhea,* for appellant.

*E. A. Cook* and *Warrington & Stewart, contra.*

HOLCOMB, J.

A plaintiff instituted a suit to foreclose a mechanic's lien on real estate, making the appellant, the Lexington Bank, and appellees Bancroft parties defendant in the action. Defendants Bancroft were the fee owners of the property involved in the suit, and defendant bank claimed a lien thereon by virtue of a mortgage in its favor executed by the Bancrofts. The bank appeared in the action, and, by way of cross-petition, pleaded that the Bancrofts were indebted to it on a promissory note for the sum of $1,122, executed by them to the bank, and that said note was secured by a real estate mortgage on the premises described in the petition, and prayed a finding of the amount due on the note and mortgage, and that the same might be adjudged a valid lien on said premises, and that the real estate be sold in satisfaction of the amount due, if the same were not paid at a short date, to be fixed by the court. To this cross-petition of the bank the Bancrofts filed an answer, in which the giving of the note and mortgage was admitted, and, as a defense, it was pleaded that the contract evidenced thereby was usurious, in that by the agreement of the parties thereto a greater rate of interest was charged for the loan and forbearance of money than the rate of $10 per annum on the hundred dollars, the answer setting forth in detail the particulars of the transaction and the different items entering into the consideration of the note, and the amount of unlawful interest included therein. It was also pleaded that, after the maturity of the note and mortgage mentioned in the cross-petition, a new contract was entered into between the parties for a further extension of the indebtedness, and that said contract was likewise usurious; the answer stating in detail the facts constituting the alleged usury. Further renewal contracts were also pleaded, each of which, it was al-

16

leged, was usurious, and that at the time of filing the cross-petition the defendant bank held two notes of defendants Bancroft, other than the one declared on, as evidencing the usurious contract so pleaded, one being for the sum of $1,400 and the other for the sum of $200, giving the dates and maturity thereof. The answer prayed for an accounting, and the ascertainment of the amount actually due the bank, after allowing credits and payments claimed to exist in favor of the mortgagors, and for general equitable relief. There were other issues tendered by the answer, as to certain collaterals alleged to have been given to secure the debt, for the proceeds and value of which the Bancrofts claimed they were entitled to credit; but, as all such matters are eliminated from the questions presented for our consideration by this appeal, we need not further notice them. A reply was filed, denying the usury alleged in each and all of the transactions mentioned in the answer; the reply stating in detail the items entering into each of the notes executed by the Bancrofts, and the amount of interest charged in each, which, it was alleged, did not exceed ten per cent. per annum, and on the issues thus framed the parties went to trial. A referee was appointed to take the testimony and report to the court the evidence, with its findings of fact, and conclusions of law. We will only notice such portion of the report of the referee and the action of the trial court thereon on exceptions by the defendants Bancroft as seems necessary to an intelligent understanding of the points involved in the consideration of the case on appeal. We are not favored with a brief on the part of the appellees Bancroft, and are compelled to decide the controversy upon the record and a brief by appellant's counsel, with such independent research as we have had time for at our command.

The referee made several findings of fact, those material to the question now under consideration being as follows:

"6. I find that neither upon the note for $1,122 made by the defendants Bancroft, to the defendant, Lexington Bank, and by them delivered to it, which note is set forth

in the defendant Lexington Bank's cross-petition and answer, nor upon any of the notes of which it is a renewal nor upon any of the items which are included in said note of which it is a renewal was there contracted for, received or reserved a rate of interest exceeding ten per cent. per annum, said note being the one secured by the mortgage set out in said cross-petition.

"7. I find that no part of said $1,122 note has been paid, and there is now due thereon the sum of $1,865.88 according to the terms thereof.

"8. I find that on the 12th day of April, 1893, a new note for the sum of $1,299 was made and delivered by the defendants Florence M. Bancroft and William M. Bancroft, to the defendant Lexington Bank, as a renewal of the said $1,122 note, and for the purpose of keeping the obligation created by said $1,122 note in bankable shape, the said $1,122 note being retained by the defendant bank, and marked "collateral" as shown by indorsement thereon, and said mortgage was also retained by said bank; that from time to time after the making and delivery of said renewal other renewals were made and delivered by the defendants, Florence M. Bancroft and William M. Bancroft, to the defendant Lexington Bank, for the same purpose, said $1,222 note and said mortgage still being retained by said bank.

"9. I find that in these renewals and on them a greater rate of interest than ten per cent. per annum was contracted for, by and between the parties and by the defendant bank, and by it charged and included in said notes.

"10. I find that all of these renewals have been canceled and surrendered by the defendant bank to the defendants Bancroft, excepting the last two given, one of which two is for the sum of $1,400 dated January 14, 1895, and signed by Florence M. Bancroft, and William Bancroft, and the other is for the sum of $200 dated January 9, 1897, and made by William M. Bancroft, into which two notes all of the other renewals were merged; and the said $200 note is the one in these findings mentioned in which said taxes

and said interest found to have been paid by William M. Bancroft were included, together with other items of indebtedness of said William M. Bancroft to said bank." ·

As a conclusion of law the referee found that the bank had a valid lien on the premises mortgaged for the amount found due by the seventh finding of fact, and was entitled to a decree of foreclosure as prayed, and a sale of the premises in satisfaction of the amount found due. On objections and exceptions by the defendants Bancroft, the trial court set aside the seventh finding of fact, and approved and confirmed the remainder. The court construed the referee's ninth finding to be and mean that at the time the indebtedness was renewed, April 12, 1893, a new and original contract was entered into, and the note and mortgage sued on were, by agreement of the parties, retained as collateral security to the contract then entered into, and so found, in effect, that such contract was tainted with the vice of usury, as was found by the referee, and that the amount then due on the indebtedness was the sum of $1,238.13, to which sum the cross-petitioner was limited in its recovery, by reason of the usurious character of the contract, less credits which should be applied thereon, and regarding which there is no controversy, and entered a decree of foreclosure accordingly. The bank appeals.

It is argued in substance that, the note sued on being free from the vice of usury, and retained by the payee, the renewal contract did not discharge the indebtedness evidenced thereby; and that the agreement to take usury, even though made, could not affect such note and mortgage, and that the bank was entitled to recover the full amount due thereon, including interest, according to its terms; that the contracts of renewal can only be regarded in their character as collateral to the principal indebtedness, which is unaffected by any subsequent usurious agreement. It is also contended that the evidence will not support the finding of the referee that usury was contracted for in all or either of the renewal notes given after the maturity of the note for $1,122, which was made the

foundation of the bank's cause of action, as stated in its cross-petition. As the bank did not challenge the findings of the referee, which were, with the exception noted, confirmed by the court, we think it is now bound by such findings, and can not be heard to dispute their truthfulness, or escape the legal consequences flowing therefrom.

This, therefore, leaves but one question to be determined, and that is, what is the legal effect with respect to the rights of the contesting parties, because of the contract of renewal entered into between them, whereby it was agreed that usurious interest should be charged for the further loaning of the money for which the notes were given, which indebtedness prior to the time of the first renewal had been evidenced by the note and mortgage pleaded in the bank's cross-petition, and which was found to be free from the taint of usury? Was it an extension of the time of payment under the old contract, which was free from usury, or was the nature of the transaction such as to give it the character of a new contract affected with the vice of usury? The finding of the referee, though somewhat obscure, was, we think, as construed and found by the trial court, a finding that the original indebtedness was satisfied by the execution of the new note then given providing for the payment of the sum for which made payable, at a stated time in the future, and the retention of the note and mortgage originally given, as collateral security for the fulfillment of the contract last entered into. The evidence as to the course of dealings between the parties fully justifies this inference. It was as though the parties had canceled the evidence of the old indebtedness, and, as security to the new, executed a note and mortgage on the debtor's real estate and delivered the same as collateral to the unsecured notes, evidencing the usurious contract. This is, in effect, what was in fact done. The note and mortgage were satisfied for the purpose for which they were executed and retained by the creditor as further security to the notes evidencing the new contract. The transaction by which the first renewal was accomplished,

and which was tainted with usury, as well as all subsequent transactions relating to the extension of the time of the payment of the debt, falls, we think, within the principle of the rule stated in *McDonald v. Beer,* 42 Nebr., 437, in which it is held: "Where a loan is made at a legal rate of interest and a note executed as evidence of the indebtedness thereby created, and at the maturity of the note a contract is made by which the time of payment is extended and a new note is given in which is included interest on the amount of the loan at a usurious rate for the time of the extension, the renewal note is tainted with usury." In the opinion it is said: "The judge who tried the case in the district court evidently adopted the view that the transaction was an illegal one or tainted with usury from the date January 16, 1885, when the first renewal notes were given in part for the interest figured at a usurious rate, and rendered judgment for the amounts loaned with legal interest from the dates of inception to January 16, 1885, deducting therefrom the several sums paid, and this we think was right and according to the correct rule of law as applied to such transactions. Where a loan is made at a legal rate of interest and a note executed as evidence of the indebtedness thereby created, and at the maturity of the note a contract is made by which the time of payment is extended and a new note is given in which is included interest on the amount of the loan at a usurious rate for the time of the extension, the renewal note is tainted with usury. Tyler, Usury, 352; *Webb v. Bishop,* 7 S. E. Rep. [N. Car.], 698, and cases cited." Applying the rule above stated to the case at bar, the bank would be entitled to recover the amount of the original indebtedness evidenced by the $1,122 note, with all lawful interest accrued thereon to the date of the renewal contract, when usury was charged and contracted for, after which, by reason of the force of the statute on usury, the creditor must lose all interest which would otherwise accrue; and all payments made, whether as interest or as a part of the principal, would apply in extinguishment of

the principal and lawful interest accrued to that time. The decree of the district court based on the findings of the referee conformed to the rule stated; and this, we think, adjusted the differences between the parties in harmony with the law. The note and mortgage sued on were held as a pledge to the payment of the valid demands owing by the makers to the payee, and nothing more. Whatever sum was justly due the bank on the principal indebtedness, to which the mortgage was held as collateral security, the bank had the right to subject the property mortgaged to its satisfaction; but it could not claim or recover a greater sum, or establish a lien for a greater amount, than was actually due on the principal indebtedness. To the extent that the principal notes evidencing the indebtedness existing between the parties fail, because of their usurious character, to the same extent would the collateral security fail. Webb, Usury, sec. 296; *Bell v. Lent,* 24 Wend. [N. Y.], 230; *Moncure v. Dermott,* 13 Pet. [U. S.], 345; *Kellogg v. Adams,* 39 N. Y., 28, and authorities therein cited.

The decree of the district court gave to each of the parties their lawful dues, and is accordingly

AFFIRMED.

SULLIVAN, C. J., concurring.

I agree fully with the views expressed in the foregoing opinion. It is the business of the courts to ascertain the agreements of parties, not to make agreements for them by presuming the existence of mutual intentions which in truth never existed. It is entirely clear from the indorsement on the original note that it was to be held by the bank as collateral security; in other words, it became, by the express contract of the parties, a mere incident or accessory of the renewal notes. This contract was supported by a valuable consideration, and I can conceive of no sound legal reason why it is not enforceable. The amount due upon the original note could not be made the measure of the bank's recovery without violating the agreement under which the renewal notes were given. The parties having,

by a valid contract, made the original note collateral, it is collateral, and must be dealt with as such. If the renewal notes were wholly void, the case would be different, for then there would be no consideration for the agreement making the original note a mere adjunct of the renewals.

SEDGWICK, J., dissenting.

The proposition that the giving of the renewal note, by which it was agreed to pay an illegal rate of interest upon the loan, operated to make the original note and mortgage usurious, seems to me unsound. In *Burnhisel v. Firman,* 22 Wall. [U. S.], 170, 22 Law. Ed., 766, it is said : "If a security founded upon a prior one be fatally tainted with that vice [usury] and the prior one were free from it but given up and canceled, and the latter one thereafter be adjudged void, the prior one will be revived, and may be enforced as if the latter one had not been given." In *Rountree v. Brinson,* 3 S. E. Rep. [N. Car.], 747, it is held : "When a note or bond taken for a valid debt, or to renew a valid note, is void for usury, the creditor may, in an action thereon, recover judgment for the valid debt, when the complaint alleges the facts constituting that debt; and an assignee of the note or bond has the same rights as the original creditor. " To the same effect are *Cook v. Barnes,* 36 N. Y., 520; *Farmers & Mechanics' Bank v. Joslyn,* 37 N. Y., 353; *Rice v. Welling,* 5 Wend. [N. Y.], 595; *Russell v. Nelson,* 99 N. Y., 119, 1 N. E. Rep., 314. In *Farmers & Mechanics' Bank v. Joslyn, supra,* it was said : "The infected contract did not absolve the mortgagor from his antecedent obligations, nor did it impair the rights of the plaintiff under a prior and valid agreement. It is true that the usurer is not permitted, at his own election, to allege his illegal act as a ground for reinstating an old security; but it is equally true that a party, who claims to be the victim of exaction, can not avail himself of the invalidity of a later contract, as a shield from liability on one of earlier date, which was honest and free from vice. (*Brown v. Dewey,* 1 Sandf. Ch. [N. Y.], 57; *Swartwout v.*

*Payne,* 19 Johns. [N. Y.], 294; *Billington v. Wagoner,* 33
N. Y., 31; *La Farge v. Herter,* 9 Seld. [N. Y.], 241; *Crane
v. Hubbel,* 7 Pai. Ch. [N. Y.], 413.)" Some of the cases
were decided under statutes providing that a usurious
note is void, and the fact is mentioned that the giving of
such a contract would furnish no consideration for the
surrendering of the former valid one, but I do not see any
reason for making a distinction in this case. The finding
of the referee was that all of the renewals which were
usurious had been canceled and surrendered by the bank
to the defendants Bancroft, excepting the last two given,
and that when the first usurious renewal was given the
original note, which was not usurious, was marked "Col-
lateral," and it, with the mortgage securing it, was re-
tained by the bank. It was upon this note and mortgage
that this action was brought. There was then no agree-
ment on the part of the bank to surrender or cancel the
note and mortgage in suit. On the other hand, it was ex-
pressly agreed that it should remain a valid obligation,
and be held as collateral to the subsequently executed re-
newal notes. It may be admitted that these transactions
amounted to new agreements to pay an illegal rate of in-
terest on the original principal, but this would not affect
the liability on the note and mortgage in suit. In *Richards
v. Kountze,* 4 Nebr., 200, after the original notes, which
were not tainted with usury, became due, a contract was
indorsed thereon, by which it was agreed to extend the
time of payment of the principal of the indebtedness, and
to pay usurious interest for such extension. Justice
GANTT, delivering the opinion of the court, said: "If the
original contract is bona fide, and wholly free from the
taint of usury, then no subsequent agreement to pay usury,
or an usurious premium upon the debt, will invalidate the
instrument given for the payment of the debt, or affect the
original contract with the vice of usury, or prevent the
collection of the debt with its legal interest. And this
proposition, I think, is well founded in principle and just
in equity, for, if there was once a valid subsisting debt,

bearing interest, the contract creating such debt can not be impaired or destroyed by a subsequent void agreement. Such agreement would be a mere nullity, and could not impair or destroy rights acquired under a valid subsisting contract. *Stewart v. Petrce*, 55 N. Y., 623; *Rice v. Welling*, 5 Wend. [N. Y.], 597; *Rogers v. Rathbun*, 1 Johns. Ch. [N. Y.], 367; *Early v. Mahon*, 19 Johns. [N. Y.], 150." This case was approved and followed in *Dell v. Oppenheimer*, 9 Nebr., 454. If in giving the renewal notes it had been expressly agreed that they should take the place of the former note, and if the former note had thereupon been canceled and surrendered to the maker, and the mortgage released of record, it might be questioned whether, under our statute, the illegal renewals could be rejected, and an action maintained to reinstate the former securities which had been surrendered and canceled for the sole consideration of an illegal agreement; but the facts in this case, as found by the referee, do not present that question. Here it was agreed that the original valid note and mortgage should continue as a liability against the makers thereof, and it seems to me clear that the holder of the valid note and mortgage can maintain this action thereon, unaffected by the subsequent illegal agreement. *McDonald v. Beer*, 42 Nebr., 437, does not seem to be in point, because in that case the action was on the renewal note, which was affected with usury, and in this case the action is upon the original note and mortgage, in which there was no usury.

I think a decree should be entered for the amount of the note sued on and interest, as reported by the referee.