CITY SAVINGS BANK, APPELLANT, V. JOHN C. THOMPSON ET AL., APPELLEES.

FILED JUNE 12, 1912. No. 16,680.

1. **Homestead: LIENS: PURCHASE MONEY.** The unpaid price which a married woman agrees to pay for land is a lien on a subsequently acquired homestead interest therein, though her husband did not execute and acknowledge the contract of purchase.

2. ———: ———: ———. Money loaned by a vendor to vendee to improve the land purchased, pursuant to the terms of the sale, is not purchase money, within the meaning of the statute which subjects a homestead to execution for the satisfaction of a decree foreclosing a vendor's lien. Comp. St. 1911, ch. 36, secs. 3, 4.

3. ———: **CHANGE OF LOCATION.** By moving from one lot to another a dwelling-house constituting part of a homestead, the homestead interest in the house is not lost, where the owner and his family live in it while it is being moved, abandon the old location, and in the new location continue to occupy the house as their homestead.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Reversed with directions.*

*William Baird & Sons,* for appellant.

*A. S. Churchill* and *John G. Kuhn, contra.*

ROSE, J.

This is a suit to foreclose a contract for the purchase of a five-acre tract of land in Douglas county. The instrument was dated November 9, 1904. The City Savings Bank, plaintiff, was vendor and Emma V. Thompson was vendee. She agreed to pay for the land $1,000 in monthly instalments, and plaintiff promised to furnish her $1,000 to improve it, and did so. When the contract was executed, she was living with her husband and five children in a two-story frame house on a lot in Omaha about three-fourths of a mile from the land purchased. Pursuant to the terms of the agreement the money furnished to her by plaintiff was expended under her orders in moving to and upon the five-acre tract the family dwelling-house in Omaha, and in paying for carpenter work, plastering, painting and masonry, and in making other improvements on the new premises. The house was moved while the family occupied it, and it continued to be their home. The purchase price of $1,000, the $1,000 to be furnished for the improvement of the tract, and interest on both items, amounting to $1,011.72, were included in the contract as purchase money, to be paid in monthly instalments of $24 each, with the exception of the last, which was $35.72, due May 1, 1915. For each of the monthly instalments, 125 in all, vendee gave her note, the aggregate being $3,011.72. Notes 1 to 32, inclusive, were paid. The note due September 1, 1907, and the rest of the notes are unpaid. Vendee died November 1, 1908. The defendants are her husband, her children and the administrator of her estate. Defendant John C. Thompson, hus-

band of the deceased vendee, answered, and adduced evidence tending to prove that he had constructed the house moved from the lot in Omaha to the five-acre tract; that its value when moved was about $2,000; that he lived in it with his family while it was being moved, and continued to occupy it as a home at the new location; that before and after it was moved, and during the time of the removal, it was his homestead; that he did not execute or acknowledge his wife's contract of purchase, but refused to do so; that he did not convey, incumber, or release his homestead interest in his dwelling-house, within the meaning of the statute, which declares: "The homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife." Comp. St. 1911, ch. 36, sec. 4.

To show the real nature of the transactions between his wife and plaintiff, he also pleaded the following as part of the original contract, John F. Flack, by whom it was executed on behalf of the City Savings Bank, being treasurer thereof: "Omaha, Neb., Nov. 8, 1904. Mrs. John C. Thompson, City: In connection with the contract which you have entered into with the City Savings Bank for the purchase of the north $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of section 32-16-13, it is hereby understood that $1,000 is to be advanced to you for the purpose of moving your residence which is now on 40th avenue near Grand avenue onto this property; the carpenter work, plastering, painting and brick work on said property to be paid from this $1,000 remaining due you; also the well, fruit trees, etc., amounting to about $......, and about $......to be used for the purchase of live stock and machinery to do the work on said place; and that we will not charge you interest on this money advanced until such time as it is paid out. John F. Flack."

Plaintiff asserts that the entire unpaid debt evidenced by the notes is purchase money and consequently is the first lien on the land and on all the improvements thereon.

The trial court, however, took a different view of the case' and decreed that the purchase price was $1,000 only; that the sum of $1,000 advanced for the moving of the house and for the making of other improvements was a loan to vendee and no part of the purchase price; that all payments of principal and interest included in the canceled notes be applied to the purchase price, leaving due thereon a balance of $381.32, which is the first lien on the land, but not on the improvements; that the husband and children of vendee have a homestead interest in the house and outbuildings to the extent of $2,000, which, as to improvements, is superior to all other claims or liens; that the homestead interest of $2,000 attached to the land when the house was moved thereon November 24, 1904, and is inferior only to plaintiff's lien for the balance of the purchase price—$381.32; that plaintiff has also a lien on the five-acre tract for $1,483.44; that the land and the improvements thereon be sold, "provided said premises shall be sold for more than enough" to pay costs, taxes, the homestead right of $2,000, and the amount of plaintiff's first lien; that in case of a sale the proceeds be applied, first, to costs and taxes; second, to the homestead interest of $2,000; third, to plaintiff's first lien of $381.32, and the balance, on order of the court, to the other lien of plaintiff. From this decree plaintiff has appealed.

There is no dispute about any material fact. The effect of the homestead interest of defendants on the contract of purchase, under the circumstances of the case, is the controlling question. Except for that interest, plaintiff's right to a strict foreclosure for the unpaid debt would be obvious. Plaintiff insists that the money advanced to the vendee for improvements went into the property with the knowledge and consent of her husband, and that her indebtedness under the terms of her contract is purchase money, within the meaning of the law that a contract for the purchase of land, or a mortgage given by a wife to secure unpaid purchase money, is valid security, though not signed by the husband, notwithstanding the property

was purchased for and occupied as a homestead. *Prout v. Burke,* 51 Neb. 24. The statutory provision is that the homestead is subject to sale in satisfaction of a judgment obtained on a vendor's lien. Comp. St. 1911, ch. 36, sec. 3. The fallacy in plaintiff's argument is that the money advanced for improvements is not, as to the homestead right, under the facts disclosed, a part of the purchase price of the land. It is true that vendee in her contract treated her entire indebtedness as purchase money, but her husband did not join in the contract. In so far as his homestead interests were concerned, he had a right to defend the foreclosure suit in the light of the actual transactions. When his wife bought the land, there were no improvements on it. His own house, after it was moved, was the first improvement on the five-acre tract, and the money furnished by plaintiff for improvements was subsequently paid out. In *Smith v. Lackor,* 23 Minn. 454, the supreme court said: "A debt incurred for lumber to build a dwelling-house on a lot held under a contract of purchase, and claimed and occupied as a homestead, represents no part of the purchase money of such homestead." Under the laws of this state, the homestead is exempt from judgment liens and from execution and forced sale except for debts secured by mechanics', laborers' and vendors' liens, and for debts secured by mortgage executed by both husband and wife or an unmarried claimant. Comp. St. 1911, ch. 36, sec. 3; *Fox v. McClay,* 48 Neb. 820.

The evidence is conclusive that the husband did not execute the contract of sale, but refused to sign it. He abandoned his homestead on the lot in Omaha as soon as his house was removed therefrom. During the removal it was occupied by himself and family with the definite intention of making it their home when located on the land purchased. That purpose was carried out. The homestead, therefore, was changed from the old location to the new. *Maguire v. Hanson,* 105 Ia. 215. The statute makes "the dwelling-house in which the claimant resides"

an essential part of the homestead. Comp. St. 1911, ch. 36, sec. 1. The homestead may be sold and a new one selected. For the period of six months the proceeds, like the homestead itself, are entitled to protection from legal process. Comp. St. 1911, ch. 36, secs. 13, 16. If the proceeds of the sale of a homestead are protected in currency and in other forms of property, the dwelling-house, which is an essential part of the exempt property, is certainly entitled to the same protection, when claimed as exempt and occupied as a homestead in a new location. Did the husband of vendee, by permitting his dwelling-house to be moved on the land purchased by his wife from plaintiff, subject his homestead interest to a lien for the money furnished to her for improvements? If his homestead interest in the house was charged with a lien in favor of plaintiff, for the money advanced for improvements, that result was not accomplished by any instrument "executed and acknowledged by both husband and wife," as required by statute. Plaintiff knew that he refused to sign the contract. That part of the agreement pleaded by defendants refers to the house as the residence of vendee. Since the money furnished to her for improvements is not a part of the purchase money, since her husband did not execute or acknowledge the contract of purchase, since he retained and asserted his homestead interest in his house after it was removed, and since he occupied it as such in the new location with plaintiff's knowledge of the facts, a vendor's lien for the money advanced for the improvements, as distinguished from purchase money, did not attach to the homestead. This conclusion is not demanded by the principles of justice governing courts of equity independently of statute, but there does not seem to be any way to avoid it without doing violence to the homestead laws.

The decree, however, is erroneous in subjecting plaintiff's lien for unpaid purchase money to the homestead interest in the improvements. When the husband of vendee permitted her to move his house onto the land pur-

chased, he knew the surrounding circumstances. He had discussed with plaintiff the terms of the contract. He knew that plaintiff had a valid purchase-money lien for $1,000 on the land before his house was moved onto it. He could not lawfully disturb that lien or interfere with plaintiff in enforcing it by permanently attaching his house to the land. By that act, he subjected his improvements to the vendor's lien, which, under the circumstances of this case, is by statute made superior to the homestead. The decree should have provided, without condition, for the sale of both land and improvements to satisfy the amount due plaintiff for purchase money, and interest thereon, taxes and costs of suit. It is therefore reversed and the cause remanded, with directions to the district court to modify the decree to conform to the views here expressed. Defendants will be required to pay the costs in this court.

REVERSED.

BARNES, J., concurring separately.

The policy of the law is to preserve the homestead for the use of, and to furnish shelter for, the family, and it therefore contains the wise, just and humane provision that the homestead cannot be incumbered except by a contract in writing signed and acknowledged by both husband and wife. In this case the husband refused to waive his right or incumber his homestead, and his wisdom and forethought seem to be fully justified by the record.

It appears that the wife is dead, and, if the view expressed in the dissenting opinion should prevail, the plaintiff would be allowed to deprive the defendant and his family of their home for the repayment of the money advanced by it to improve the property in question. For this the law gives the plaintiff no lien. It is true that the materialman and a contractor who performed labor and furnished material for that purpose could have obtained a lien on the homestead therefor, but the law makes no

provision for such a lien in favor of one who advances money with which to pay for such improvements.

It is suggested in the dissenting opinion that the sole ground of defendant's refusal to sign the contract was to avoid a personal liability. This suggestion does not seem to be supported by the record. On the contrary, his refusal must have been made in anticipation of the situation which now confronts him—that of having the home for himself and family swept away by the plaintiff's demands. I am therefore of opinion that the views expressed by the majority of the court are correct.

Again, it may be assumed that the property is of sufficient value to satisfy the plaintiff's claim without resorting to the homestead, which should not be sacrificed for that purpose.

SEDGWICK, J., dissenting.

The policy of our law is to encourage the improvement of homesteads. There are no restrictions placed upon adding to, improving or beautifying the homes of the people. If this plaintiff had removed defendant's house for them and placed it on this new homestead, and had repaired the house and otherwise improved and beautified it, the plaintiff could have filed a lien for the amount so expended and the homestead would be liable for it. In this case the plaintiff had no occasion to file a lien, because it had already a contract with the owner of the fee for the very thing for which the law would have allowed it to file a lien, to wit, for improvements made to their home. It was not necessary to have a contract for this purpose with any one except the owner of the fee. The husband refused to sign the contract. He did not own the fee in the land, and did not want to make himself personally liable for the purchase price. The property itself was good for it, and, if that is not enough without making the husband also personally liable, they might get along with the old home. There seems to have been no other reason for his refusing, as his signature was of no

importance upon the contract except to make him person-
ally liable for the additions they were making to their
home. He says that the house was his. He has consented
to attach it to his wife's real estate and make it a part
thereof. He says that the house was moved and made a
part of his wife's real estate without his consent. If he
had not consented to it, it would never have been moved,
and if he objected to having so good a home as his wife
seems to have been trying to provide for him, and did not
want the building used for that purpose, he should have
said so at the time. This he did not do, and he ought cer-
tainly now to be held to have consented to, and to have
participated in, making the house a part of the real estate,
and their home, and adding to it the improvements that
were made. If he consented to the improvements, and
the wife who held the legal title agreed that they should
be a charge upon the property, and he has been for these
years enjoying the benefit of those improvements, the
policy of the law is to charge them upon the homestead.
He knew that his wife had contracted to make these im-
provements a charge upon the homestead, and, knowing
that, he moved his house upon his wife's land, made it a
part of the real estate to be charged with the improve-
ments, and adopted it as their homestead. The improve-
ments were made and he is enjoying them as his home.
If I buy a lot, upon which to make a home, for $1,000,
with the agreement that the party from whom I buy it
shall fill it up to grade at an expense of $500, and that I
will pay $1,500 for it all improved, the filling up of the
grade is as much a part of the property purchased as is
the original lot. So, if I contract for a lot and agree that
certain improvements or additions shall be made thereto,
and that I will pay so much for the lot and the improve-
ments, the amount that I pay towards the improvements
is as much the purchase price of the lot as though the im-
provements had been made before I thought of making
any contract, and that seems to me to be precisely this case.

REESE, C. J., and HAMER, J., concur in this dissent.