CORN BELT PRODUCTS COMPANY, A CORPORATION, ET AL.,
APPELLEES, V. PAUL MULLINS ET AL., APPELLANTS,
IMPLEADED WITH FARMERS BANK, COOK, NEBRASKA,
APPELLEE.
110 N. W. 2d 845

Filed September 29, 1961.   No. 34856.

(561)

*William L. Walker* and *Earl Ludlam,* for appellants.

*Herman Ginsburg* and *Phillip F. Nestor, Jr.,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an action for an accounting and other equitable relief. The cause was referred to a referee to make findings of fact and conclusions of law, to hear evidence and report upon all of the issues, and to make a decision thereon as prescribed in section 25-1131, R. R. S. 1943.

The referee filed his report on February 25, 1960. By a decree dated March 28, 1960, the district court approved and confirmed the report of the referee and entered judgment in accordance therewith. The transcript does not contain exceptions or objections to the report of the referee filed by any of the parties. However, the decree which approved and confirmed the report of the referee recites that the plaintiffs filed a motion to confirm the report of the referee except for a modification in one particular and that no other objections were filed.

On April 5, 1960, the appellants Paul Mullins and Benita Mullins, who were the principal defendants, filed two motions for new trial. One of the motions, which was filed pro se, is largely an attack upon the report of the referee. The other motion, which was filed by the lawyers who represented the defendants at the hearing before the referee, complains only of alleged errors in the decree of the district court. Both motions for new trial were overruled.

A number of the defendants' assignments of error complain of the findings of the referee. The failure of the defendants to file objections to the report of the referee in the court trial prior to confirmation of the report by the trial court prevents consideration of objections to the report of the referee at this time. "The unchallenged findings of fact by a referee, when confirmed by the court, are binding on the party against whom they operate, and from the legal consequences flowing therefrom he can not escape." Chicago Lumber Co. v. Bancroft, 64 Neb. 176, 89 N. W. 780, 57 L. R. A. 910. See, also, McMurtry v. Brown, 6 Neb. 368; 45 Am. Jur., References, § 39, p. 570; 76 C. J. S., References, § 158, p. 278. Thus, for the purposes of this appeal, the findings of fact of the referee, except as modified by the trial court in the decree dated March 28, 1960, will be accepted as true. The only assignments of error which will be considered are those relating to alleged errors of law. There is no cross-appeal.

The appellees, who were the plaintiffs in the court below, are the Corn Belt Products Company and Erwin Equipment Company. Their petition alleged that the plaintiffs were corporations engaged in the sale of farm machinery, equipment, and supplies; that Paul Mullins was an employee of the plaintiffs; that on April 18, 1959, the plaintiffs discovered that Paul Mullins had converted personal property of the plaintiffs having a value of approximately $20,000; that proceeds from such property had been invested in certain other described property or deposited in a bank to the account of Paul Mullins; and that the defendants were insolvent. The petition prayed that the defendants be required to account for all of the plaintiffs' property then in the possession of the defendants and the proceeds from the sale of the plaintiffs' property; that the plaintiffs be adjudged to be the owners of property purchased by the defendants with the proceeds from the sale of the plaintiffs' property; that the defendants be enjoined from

further disposing of the plaintiffs' property; that a receiver be appointed; and that the plaintiffs have judgment for the amount due them.

The defendants filed an answer and cross-petition. The answer contained a general denial and alleged that in November 1953 the plaintiffs employed Paul Mullins as a twine salesman; that in March 1954 his employment was changed to that of warehouse manager at Tecumseh, Nebraska, and other points in southeastern Nebraska, northeastern Kansas, and northwestern Missouri; that Paul Mullins was to be reimbursed for all of his expenses and was to receive a bonus of one-half of the net profits from his operations; that the plaintiffs failed to account to Paul Mullins for the bonus due him; and that he retained the sum of $7,310.85 to apply upon the amount due him. The cross-petition alleged that there was in excess of $47,500 due Paul Mullins as bonus and the sum of $1,925 for other services; that the plaintiffs advanced money to the defendant Paul Mullins to purchase and modernize a residence property in Tecumseh; that all but approximately $500 of the money advanced had been repaid to the plaintiffs by deductions from the drawing account of Paul Mullins; that the plaintiffs had wrongfully caused the Corn Belt Products Company to become the record owner of the property; and that the property was the homestead of the defendants. The defendants prayed for an accounting, judgment for the amounts due them, and that the title to the residence property be quieted in them.

The plaintiffs filed a reply and answer to the cross-petition containing a general denial and alleging that the defendants had defaulted in their contract to purchase the residence property and that pursuant to the terms of the contract the defendants' rights in the property were forfeited; that in an action of replevin pending in the same court the plaintiffs had taken possession of property previously entrusted to Paul Mullins having a value of approximately $19,000; that it was necessary

that the ownership of the property taken in replevin be determined in this action; that after giving the defendants credit for this property there was more than $32,000 due the plaintiffs for property converted by the defendants; and that the defendants were given credits upon the purchase of the residence property without knowledge by the plaintiffs that the defendants had converted the plaintiffs' property.

The referee found that Paul Mullins was an employee of the plaintiffs and that there was no agreement for a bonus as alleged by the defendants; that the property taken in the replevin action was the property of the plaintiffs; that Paul Mullins had converted property of the plaintiffs having a value of $17,516.60; that of this amount $7,337.10 was represented by a bank account and other property purchased by Mullins which should be turned over to the plaintiffs; that the plaintiffs should have judgment against the defendant Paul Mullins for the balance of $10,179.50; that the plaintiffs purchased the residence property in Tecumseh and then entered into a contract to sell the property to the defendants for $4,500; that deductions from the salary of Paul Mullins had reduced the balance due on the contract to $841.20; that approximately $2,000 had been paid on the contract before any substantial conversion of the plaintiffs' property had occurred; that the defendants should be required to pay the plaintiffs $2,500 to receive title to the property; and that if the defendants fail to pay the $2,500, the plaintiffs should pay the defendants $2,000 and retain the title to the property. The referee recommended that judgment be entered in accordance with his findings.

The district court generally approved and confirmed the report of the referee. The court found and adjudged that the property taken in the replevin action was the property of the plaintiffs; that the plaintiffs should receive the bank account and other property which had been purchased by the defendants with the proceeds from the sale of the plaintiffs' property; that the plaintiffs

should have judgment against Paul Mullins for $10,-179.50; that the plaintiff Corn Belt Products Company was the owner of the residence property in Tecumseh and that there was a balance of $2,500 due upon the contract; and that unless the defendants paid the sum of $2,500 within 60 days, the Corn Belt Products Company was entitled to strict foreclosure of the contract.

The assignments of error which require consideration are that the trial court erred in making a reference of the cause; in appointing Elmer F. Witte referee; in permitting hearings to be had both in Pawnee County and Johnson County, Nebraska; in not submitting the cause to a jury; in determining in this action the ownership of the property taken in the replevin action; in awarding to the plaintiffs the property which had been purchased by the defendants with proceeds from the sale of the plaintiffs' property; in finding that $2,500 was due upon the contract to purchase the residence property in Tecumseh; and in granting strict foreclosure.

There can be no question about the right of the trial court to make a reference in this case. Both of the parties requested an accounting. Section 25-1130, R. R. S. 1943, authorizes the court to direct a reference upon its own motion where the trial of an issue of fact shall require the examination of mutual accounts, and where the taking of an account shall be necessary for the information of the court before a judgment in cases which may be determined by the court.

The statute further provides that the parties may agree upon a suitable person and the reference shall be ordered accordingly; and that if the parties do not agree, the court shall appoint a referee who shall be free from exception. § 25-1132, R. R. S. 1943. The order appointing the referee in this case recites that Elmer F. Witte was wholly disinterested and was satisfactory to the parties in this case and their respective counsel. Thereafter, the parties proceeded to trial, participated in lengthy hearings before the referee, and made no ob-

jection until after the report of the referee had been filed and approved by the court. In the motion for new trial filed pro se the defendants alleged that the referee was disqualified because he had previously prosecuted Paul Mullins for selling mortgaged cattle and had represented the first wife of Paul Mullins in a divorce action against him. There is no evidence in the record to support these allegations. The defendants' failure to make timely objection to the appointment of the referee precludes any consideration of the objections made for the first time in the motion for new trial. In Morris v. Haas, 54 Neb. 579, 74 N. W. 828, the court said: "It is very clear that until the defendant was confronted with an adverse report he never sought to question the referee's authority, and now, after submitting to the proceeding and taking part therein for about two years, and after the taking of thousands of pages of proof, he cannot be heard to question it." See, also, 76 C. J. S., References, § 67, p. 218, § 87, p. 230.

The defendants complain that it was error for the referee to hold some of the hearings in Pawnee County, that the venue of the action was in Johnson County, and that all of the hearings should have been held in that county where the action was pending. Here, again, is a matter to which no objection was made until the motion for new trial. The general rule is that venue in a transitory action is a matter which may be waived and, generally, it is held to be waived where timely objection is not made. See, Baker v. Union Stock Yards Nat. Bank, 63 Neb. 801, 89 N. W. 269, 93 Am. S. R. 484; 92 C. J. S., Venue, § 124, p. 820; 56 Am. Jur., Venue, § 38, p. 42. We hold that the defendants' participation in the hearings held in Pawnee County without objection was a waiver of the right to object to the hearings being held in Pawnee County.

The defendants also complain that the trial court erred in failing to submit the case to a jury and that the court should not have determined in this action the

ownership of the property taken in the replevin action. This action began as a suit for an accounting. The matter in controversy involved a large number of transactions that took place over several years. The basis for equity jurisdiction in an accounting action is inadequacy of the remedy at law. Schmidt v. Henderson, 148 Neb. 343, 27 N. W. 2d 396. This case was a proper case for equity jurisdiction.

The ownership of the property taken in the replevin action became an issue in the accounting suit under the allegations of the answer to the cross-petition. It does not appear that the defendants sought to eliminate this issue from the case or made any objection to its being determined in this action until the motion for new trial. A complete accounting between the parties would not have been possible if the property taken in the replevin action had not been taken into consideration. Where a court of equity has obtained jurisdiction of a cause for any purpose, it will retain it for all, and will proceed to a final determination of the case, adjudicate all matters in issue, and thus avoid unnecessary litigation. Wischmann v. Raikes, 168 Neb. 728, 97 N. W. 2d 551. Thus, it was proper for the trial court in this action to determine the ownership of the property taken by the plaintiffs from the defendants in the replevin action.

The defendants further complain that the trial court erred in awarding to the plaintiffs the bank account and other personal property defendants purchased with the proceeds from the sale of the plaintiffs' property. The referee found that Paul Mullins had converted property of the plaintiffs having a value of $17,516.60, and of this amount $7,337.10 was represented by a bank account and other property purchased with the proceeds from the sale of the plaintiffs' property. The plaintiffs were entitled to follow the proceeds resulting from the sale of their property and recover from the defendants that property which had been purchased with the proceeds. When one person obtains the property of

another by theft or fraud, equity will raise a constructive trust in favor of the defrauded party. Logan v. Aabel, 90 Neb. 754, 134 N. W. 523. See, also, Lamb v. Rooney, 72 Neb. 322, 100 N. W. 410, 117 Am. S. R. 795; Tecumseh Nat. Bank v. Russell, 50 Neb. 277, 69 N. W. 763; Restatement, Restitution, § 202, p. 818. The trial court properly awarded to the plaintiffs the bank account and other property that Paul Mullins had purchased with the proceeds from the sale of the plaintiffs' property.

The remaining assignments of error which require discussion relate to the contract to purchase the residence property in Tecumseh. The defendants entered into a written contract to purchase the residence property in Tecumseh from the Corn Belt Products Company for the sum of $4,500. The contract called for a down payment of $500 and monthly payments of $100 thereafter until the balance of the purchase price with interest was paid. The defendants failed to make the down payment but deductions from the salary of Paul Mullins reduced the balance due on the contract to $841.20.

A part of the credits were given during the time that Paul Mullins was converting the property of the plaintiffs and embezzling collections which he made. The referee found that approximately $2,000 was paid on the contract before Mullins made any substantial conversion of the plaintiffs' property. The trial court found that the balance due on the contract was $2,500, in effect cancelling all credits except $2,000. This finding was proper because the plaintiffs were entitled to rescind the credits which had been given during the time that Mullins was converting their property and funds and they were not aware of his defalcations. Credits given under a mistake of fact may be rescinded. See Tarascio v. Mancuso, 141 Neb. 225, 3 N. W. 2d 400.

The defendants argue that Benita Mullins is entitled to a homestead interest as against the plaintiffs. They

point out that Benita Mullins did not participate in the conversion of the plaintiffs' property and that the judgment for such conversion is against Paul Mullins only. The important fact is that the consideration for the purchase of the property has never been paid. A vendor's lien is one of the exceptions in the homestead statute. § 40-103, R. R. S. 1943. A homestead right would not arise and attach to the title or interest of the defendants acquired under the contract with Corn Belt Products Company as against the enforcement of the consideration provided for in that contract. Jackson v. Phillips, 57 Neb. 189, 77 N. W. 683. See, also, City Savings Bank v. Thompson, 91 Neb. 628, 136 N. W. 992, 41 L. R. A. N. S. 89; Peterson v. Fisher, 85 Neb. 745, 124 N. W. 145, 133 Am. S. R. 688. The defendants have no homestead right in the residence property in Tecumseh as against the Corn Belt Products Company.

The defendants complain that the trial court erred in granting strict foreclosure of the contract for the purchase of the real estate. A court of equity will grant a strict foreclosure of a real estate contract where in the exercise of a sound judicial discretion it would be inequitable or unjust to refuse to do so. Swanson v. Madsen, 145 Neb. 815, 18 N. W. 2d 217. Courts of equity will decree a strict foreclosure of land contracts only under peculiar and special circumstances. Ruhl v. Johnson, 154 Neb. 810, 49 N. W. 2d 687.

Strict foreclosure has been granted where the purchaser did not have a substantial equity in the property. In this case the purchasers may be said to have an equity in the property only if the real estate contract is considered as a separate matter, detached from the other transactions between the parties. Such a view of the matter ignores the true factual situation.

The real estate contract in this case is between an employee and his wife, and one of his employers. The employee and his wife have had possession of the property for more than 5 years. During this time they have

paid a little over $300 in special and general taxes. The record does not show what other expenditures they may have made.

The only payments which have been made on the contract are credits resulting from deductions from the employee's salary. During his employment the employee has converted more than $17,500 of his employer's property.

It was proper for the trial court, in the exercise of a sound judicial discretion, to grant a strict foreclosure of the contract. · The special circumstances in this case made it inequitable to refuse strict foreclosure. We conclude that strict foreclosure should be granted in this case.

The trial court taxed one-half of the referee's fee to the plaintiffs and taxed all other costs to the defendants. Section 25-1137, R. R. S. 1943, provides that referee's fees shall be taxed as part of the costs in the case. There · was no error, prejudicial to the defendants, in the taxation of the costs in the district court.

The judgment of the district court is correct and it is affirmed.

AFFIRMED.