HARRY DICKERSON ET AL., APPELLANTS, V. SURETY NATIONAL FARM LOAN ASSOCIATION ET AL., APPELLEES.

FILED MAY 15, 1934. No. 28940.

*Gerald E. La Violette* and *T. B. Murray*, for appellants.

*Courtright, Sidner, Lee & Gunderson* and *Paul Maynard*, guardian *ad litem, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY and PAINE, JJ., and REDICK, District Judge.

GOOD, J.

Plaintiffs, as the only heirs at law of James Dickerson, deceased, brought this action to recover from defendants a judgment for a definite amount. Defendants denied liability. Trial to the court resulted in judgment for defendants. Plaintiffs have appealed.

The facts which give rise to this controversy may be summarized as follows: James Dickerson obtained a loan from the Federal Land Bank of Omaha, secured by a mortgage on his farm. The loan was payable in instalments of $195 semiannually, in April and October of each year, with privilege to him to pay a larger amount upon the principal on any interest pay day. Payments of interest were made as they became due through the defendant Surety National Farm Loan Association, which, for brevity, will hereinafter be referred to as the national association. This association is organized pursuant to federal statute, the stockholders in the corporation being borrowers from the land bank. Defendant Roper was secretary-treasurer of this association and also secretary-treasurer and general manager of another corporation, known as the Dodge Agricultural Credit Association, hereinafter referred to as the credit association. In designating this corporation, Roper sometimes substituted his individual name for the word "Dodge." Both corporations occupied the same office. The credit association appears to have conducted a general real estate and loan business.

August 22, 1928, James Dickerson paid to Roper $2,000, and the following instrument was executed in two parts:

"Date August 22, 1928.

"To Roper Agricultural Credit Association:

"I am inclosing $2,000, which amount I wish to leave with you for approximately until October 1, 1928. This money is left with you with the understanding that I am to be allowed interest at the same rate I am paying on my federal farm loan.

"(Signed) James Dickerson.

"Address, Madison, Nebraska."

"Date August 22, 1928.

"Received from James Dickerson of Madison, Nebraska, the sum of $2,000, which amount is to be left with us and upon which interest is to be allowed at the same rate as James Dickerson is now paying on his federal farm loan. It is further agreed that such funds shall be returned to James Dickerson with interest as aforesaid on October 1, 1928, without notice.

"Roper Agricultural Credit Association,

"(Signed) John H. Roper,

"Secretary-Treasurer."

At a time thereafter, perhaps in September, Dickerson paid the further sum of $543.58 to Roper. On the first of October following, Roper paid $195 out of the funds so received from Dickerson to the land bank as an interest payment upon Dickerson's mortgage. Some time in December following, Roper was removed from his office as secretary-treasurer of the credit association, and, in his stead, defendant Tresnak was appointed secretary-treasurer of the association. Defendant Vakiner was president of the credit association, was a farmer, and had no part in the management of the affairs of the association, except to preside at directors' meetings.

A few weeks after Tresnak was installed as secretary-treasurer he discovered from its books that the credit association apparently owed Dickerson $2,348.58, being the difference between the $2,543.58, paid to Roper by

Dickerson, and the $195 expended by Dickerson in paying the interest upon the latter's loan. They also discovered that there were other liabilities of a like character, aggregating a considerable amount, and that the association was indebted to banks for money borrowed. Vakiner and Tresnak, according to their testimony, ascertained that the assets of the credit association consisted principally of second mortgages and aggregated about $79,000; that the liabilities of the association amounted to about $53,000, and that the association was not able to pay its obligations at that time, but they believed that its liabilities could be settled, if given an opportunity to realize on the assets it possessed. Vakiner and Tresnak thereupon prepared a number of promissory notes, sought out the various creditors and asked them to take notes for the amounts due them. A number of the creditors accepted these notes, and among them Dickerson accepted a note, dated April 1, 1929, for $2,348.58, due in two years, with interest at 4 per cent. per annum, and at the same time he received from the credit association interest on the amount from the date it had been paid to Roper until the date of the note. At that time Dickerson did not have with him the instruments above set out, but stated to Tresnak and Vakiner that they were in his safe deposit box in Norfolk. He promised to obtain these instruments and return them to the credit association, and this he did a few days later. In July, 1929, Dickerson departed this life intestate, leaving no widow or issue, and the plaintiffs are his only heirs at law. His estate was fully administered, debts paid, property assigned to the plaintiffs, and the administrators discharged.

It is the contention of plaintiffs that Dickerson was of unsound mind and had been for a number of years previous to his death; that when he made the deposit of the $2,000 and the $543.58 with Roper he made it for the specific purpose of having it apply upon his mortgage to the Federal Land Bank on the first of

October, 1929, and that the money was paid to Roper as secretary-treasurer of the national association; but that Roper had embezzled the money; that Tresnak and Vakiner had assisted in doing so, and that all the defendants were liable to the plaintiffs.

Plaintiffs in their brief contend that this is an action in equity for an accounting. If such is the case, then the action is triable *de novo* in this court. If, in fact, it is a law action, then the findings of the district court have the same force and effect as the verdict of a jury, and the court's findings will not be disturbed, on appeal, unless they are clearly wrong.

Originally, the basis of equity jurisdiction over matters of accounting was necessity for a discovery, but later authorities have added two other grounds, viz.: The complicated character of the accounts and the existence of a fiduciary or trust relation. 1 C. J. 613. We think the real basic reason for equitable jurisdiction is inadequacy of remedy at law.

In *Merritt v. Johnston,* 109 Neb. 859, it was held, referring to actions for accounting: "Neither party is entitled, as a matter of right, to have the case transferred to a court of equity, unless it should manifestly appear that the issues and items therein are so numerous and the evidence to sustain them so variant, technical and voluminous that a jury is incompetent to deal intelligently with them and come to a just conclusion."

In *Kuhl v. Pierce County,* 44 Neb. 584, in an action against a county treasurer and his bondsmen for two successive terms, the sureties being different persons, the petition alleged that because of the manner in which the treasurer had kept his books of account his record did not disclose whether the defalcations, complained of in the petition, occurred during his first or second term. The prayer of the petition was for an accounting in equity. *"Held,* (1) That the averments of the petition made out a cause of action in favor of the county upon contracts for the payment of money

only unincumbered by any collateral agreements, contracts, or securities whatever; (2) that the action was one legal in its nature; (3) that the facts averred in the petition were not sufficient to entitle the county to equitable relief."

In *Lamaster v. Scofield*, 5 Neb. 148, it was held: "Under the Code, discovery has ceased to be one of the objects sought in a court of equity. Jurisdiction, therefore, in cases of mutual accounts between the parties, cannot be maintained on that ground, and is restricted to cases which have their origin in intimate or confidential relations of the parties, and does not extend to ordinary cases of mutual accounts between creditor and debtor."

We are convinced, from an examination of the pleadings, that the action is not one for equity jurisdiction, but is an action at law to recover a specific amount which plaintiffs claim defendants have embezzled and appropriated to their own use.

The trial court found generally for the defendants. The evidence respecting Dickerson's mental condition was in conflict. We must, therefore, conclude that James Dickerson was mentally competent to transact his business. Moreover, the evidence shows that he had been a farmer and stock raiser, and continued his farm operations, the buying, selling and shipping of live stock to the markets, until within a few months of his death. There is no evidence that the amounts paid to Roper were intended by Dickerson to be used to make payment upon his mortgage to the land bank, except the inference that might be drawn from the fact that the money was left with Roper, or with the credit association, on interest, until the first day of October, when his interest payment was due and he could make a payment upon the principal of his mortgage. If Dickerson was competent, as the court found, then it must be presumed that he knew he had loaned the money to the credit association; that he was to receive

interest thereon at the rate his mortgage bore. He knew that that instrument plainly provided for the repayment of the money to him at a fixed date, to wit, October 1, 1928. He knew, when Tresnak and Vakiner visited him at his farm and informed him of the financial condition of the credit association, that they were tendering him a note, due in two years, drawing interest at 4 per cent., which he consented to accept as representing his claim against the credit association, and not a claim against the national association. He had been careful to preserve in his safe deposit box the evidence of his deposit with the credit association. When he agreed to accept the note he agreed to return that evidence, and this he did, clearly showing that he understood the transaction. Later, it appears, the credit association became bankrupt and Dickerson executed a power of attorney to a reputable lawyer to represent his claim against the bankrupt estate, and the attorney prepared for him, and he signed and verified, a claim against the bankrupt estate of the credit association. Two dividends have been paid by the bankrupt estate which were received either by Dickerson or by the plaintiffs in this action.

From the entire record, we conclude that the action was not equitable in its nature, but was one at law; that there is ample evidence to support the findings of the trial court.

No error is apparent in the record. The judgment is therefore

AFFIRMED.