GEORGE H. SCHMIDT, APPELLEE, v. HAROLD HENDERSON, APPELLANT, CONSOLIDATED WITH MINNIE SCHMIDT, PLAINTIFF, v. MATILDA WENTZ NEVILLE ET AL., DEFENDANTS.

27 N. W. 2d 396

Filed May 9, 1947.    No. 32200.

*George J. Marshall,* for appellant.

*Clifford H. Phillips,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, YEAGER, CHAPPELL, and WENKE, JJ.

YEAGER, J.

This was an action at its inception by George H. Schmidt, plaintiff, against Harold Henderson, defendant, in one cause of action. Later by amended and supplemental petition it became an action in three causes of action. It comes here in three causes of action. The first cause of action was for reformation of a lease, the second was for an accounting of rents, and the third on its face was for a writ of assistance in favor of plaintiff and against the defendant. By title appearing on the transcript, the bill of exceptions, and the briefs, it appears as George H. Schmidt, plaintiff, v. Harold Henderson, defendant, consolidated with Minnie Schmidt, plaintiff, v. Matilda Wentz Neville et al., defendants. When or how the two cases became consolidated is not made clear.

The plaintiff at the inception of the action is the appellee and the defendant is the appellant. These two parties will be hereinafter referred to as plaintiff and defendant.

The defendant by his pleadings conceded the right to reformation and the first cause of action was dismissed by the court, but for the purposes of the case the lease was treated by the parties as having been reformed.

To the second and third causes of action the defendant filed answer. He also filed a cross-petition wherein he sought an accounting against the plaintiff.

Trial was had on the second and third causes of action, and on the second cause of action and the cross-petition the court found that defendant had failed to account for crop rents of the value of $543.76 and 42 bushels of barley and that plaintiff was indebted to defendant in the amount of $224.20. In accordance with the finding the court rendered judgment in favor of plaintiff and against defendant in the amount of $319.56 and 42 bushels of barley or the value thereof in Red Cloud, Nebraska, on the 26th day of April 1946. On the third cause of action, or presumably so, a writ of assistance was

allowed. From the judgment on these two causes of action the defendant has appealed.

In order that an understanding may be had of the true situation presented by this record it becomes necessary, before proceeding with a discussion of the stated grounds of reversal, to outline the ramifications of this case, some of which are exceedingly strange, before it came to this court.

In 1944 plaintiff was agent for Minnie Schmidt and others who were owners as tenants in common of the northeast quarter of Section 23, Township 3, North, Range 10, West of the 6th Principal Meridian, in Webster County, Nebraska. On February 12, 1944, plaintiff, as agent, leased this land to the defendant for one year from March 1, 1944, to March 1, 1945, and on December 2, 1944, he again leased the land to the defendant. The second lease period was from March 1, 1945, to March 1, 1946. Both leases were in writing. The agreed rental to be paid to the extent necessary to set it forth here was one-third of all grain delivered to market at the expense of the lessee, for pasture $2 an acre, and in the case of the planting of cane the lessor was to receive one acre of corn for each three acres of cane or $5 for each acre of cane planted.

In October of 1945 Minnie Schmidt instituted action for partition of the described land. That case was docketed as case No. 5278. The land was sold to plaintiff herein pursuant to decree in that case and the sale was confirmed by the court on April 2, 1946. The defendant herein was a defendant in that action as tenant in possession. The effect of the decree of partition was to declare that he had no interest in the title to the land but the decree in nowise adjudicated his right to possession as occupying tenant.

Plaintiff filed his original petition herein on March 1, 1946, wherein he asked for an accounting of rents on the two leases hereinbefore mentioned. This was before confirmation of sale. This case was docketed as case

No. 5293. An answer and cross-petition was filed by defendant and a trial had on issues joined. Apparently a decree or judgment was rendered but it was set aside on motion for new trial which was granted. On May 15, 1946, an amended and supplemental petition was filed bearing the consolidated title under which the case comes to this court. That petition contained but one cause of action. Then on May 25, 1946, a second amended and supplemental petition was filed. This is the petition which comes to this court in three causes of action.

On April 16, 1946, plaintiff filed an application in case No. 5278 for a writ of assistance the purpose of which was to cause defendant and Hulda Henderson to vacate the real estate in question. The status of Hulda Henderson is not described. An order to show cause why the writ should not be allowed was issued and served. On April 25, 1946, the defendant answered in writing the order to show cause. No action is shown to have been taken on the order to show cause and the response thereto until the trial herein.

Apparently it was after April 25, 1946, and before May 15, 1946, that cases No. 5278 and No. 5293 were consolidated since the third cause of action in the petition on which the case before us was tried was substantially an application for a writ of assistance to carry into effect that part of the decree in case No. 5278 in effect declaring that the defendant had no interest in the lands in question.

In answer to the third cause of action the defendant alleged that he was entitled to retain possession under an oral lease for one year from March 1, 1946, which by reason of part performance by him was valid and binding upon the plaintiff. The same showing as was made in the answer to the third cause of action was made in response to the order to show cause on the application for writ of assistance in case No. 5278.

Notwithstanding the unusual and extraordinary steps

which have been taken in this litigation no procedural attack has been made upon any of them.

On the trial the first cause of action was dismissed; on the second cause of action and the cross-petition which pertained thereto a judgment was rendered in favor of plaintiff for $319.56 and 42 bushels of barley or the value thereof in Red Cloud, Nebraska, on the 26th day of April 1946; and apparently no disposition was made of the third cause of action in case No. 5293, but it appears that a writ of assistance was ordered in case No. 5278.

It should be pointed out here that the defendant made a demand for a jury trial of the second cause of action.

The defendant assigns as grounds for reversal (1) that the judgment on the second cause of action is not sustained by the evidence, (2) that the judgment on the second cause of action is contrary to law, (3) that the court erred in refusing to grant a jury trial on the second cause of action, (4) that the court erred in not compelling the real parties in interest to appear in the third cause of action, (5) that the judgment on the third cause of action is not supported by sufficient evidence, (6) that the judgment on the third cause of action is not sustained by law, and (7) that the court decided both causes of action on secondary evidence when the best evidence was produced.

The assignment relating to real party in interest requires no further discussion beyond the statement that this question was never presented for consideration by the pleadings and at no time before the filing of his motion for a new trial was it presented to the court.

The first question to be considered is that of whether or not the request for a jury trial on the second cause of action should have been granted.

The question of whether or not a party is entitled to a trial by a jury is determinable by the nature of the case at its inception. Daniels v. Mutual Benefit Life Ins. Co., 73 Neb. 257, 102 N. W. 458; Yager v. Exchange Nat.

Bank of Hastings, 52 Neb. 321, 72 N. W. 211; Gandy v. Wiltse, 79 Neb. 280, 112 N. W. 569.

In this jurisdiction an action for an accounting may under one set of circumstances find its remedy in an action at law and under another find it within the jurisdiction of equity. This court, recognizing equity jurisdiction in certain actions for an accounting, in Dickerson v. Surety National Farm Loan Ass'n, 127 Neb. 67, 254 N. W. 679, said: "We think the real basic reason for equitable jurisdiction is inadequacy of remedy at law." This statement and recognition of equity jurisdiction was approved in Sickler v. City of Broken Bow, 143 Neb. 542, 10 N. W. 2d 462.

In Lamaster v. Scofield & Cowperthwait, 5 Neb. 148, it is pointed out that equity jurisdiction is not available for ordinary cases of mutual accounts between creditor and debtor but it is available where intimate or confidential relations of the parties are involved.

The case at bar is not one of ordinary mutual account between a creditor and debtor but is in essence an accounting and dissolution of a tenancy in common of personal property. The tenancy was one wherein the rent reserved in part was a share of crops to be raised.

This court in Wendt v. Stewart, 74 Neb. 855, 105 N. W. 550, said: "Where, by the terms of a lease, rent is reserved in a share of the crops, the landlord and tenant are tenants in common of the growing crops, * * * ."

Taking into consideration the facts of this case we are convinced that an adequate remedy was available only within equitable jurisdiction and that the court did not err in its refusal to grant a jury trial.

This view of the situation then requires that we consider the case de novo and arrive at a decision independent of that arrived at by the trial court. In Dickerson v. Surety National Farm Loan Ass'n, *supra,* it was stated: "Plaintiffs in their brief contend that this is an action in equity for an accounting. If such is the case, then the action is triable *de novo* in this court."

Plaintiff's claim is that for the years 1944 and 1945 he was entitled to receive as rental 1,266 bushels of corn and 120 bushels of barley or the value thereof whereas he received only 813 bushels and 48 pounds of corn and 58 bushels of barley. He claims that 3,000 bushels of corn were raised in 1944 and 800 in 1945 and that 360 bushels of barley were raised in 1945. The defendant denies that any more was produced than the amount accounted for.

No rent corn was marketed from the farm for either year until April 1946. The rent corn received by plaintiff for both years was shelled and marketed in April 1946 and the amount was 813 bushels and 48 pounds.

In 1944 defendant raised both yellow and white corn. When the corn was husked he apparently placed it in a driveway between two corn cribs. Also in 1945 both yellow and white corn were raised. The rent corn this year was placed part on the 1944 yellow corn in the driveway and part in a crib.

The testimony of plaintiff is insufficient from which to draw any reasonable inferences as to the amount or value of corn produced in either year. He went no further in his testimony than to give his own estimate of the acreage and to give what he says was defendant's estimate of acreage and probable yield. In addition he testified that he thought there was evidence of the removal of corn. He concluded that the 1945 corn had been removed since, as he said, the corn which remained was old and was without the fresher color of the new corn. He said that he had obligated himself to pay defendant three cents a bushel or $12 for the removal of 400 bushels of the 1944 corn from where it had been piled on the ground after husking. He further testified that he saw cobs lying around where corn had been eaten by stock and chickens. He stated that from 10 to 20 bushels of corn had run out where some boards had been broken off.

As to barley plaintiff testified that the defendant told him that there were about 120 bushels. Plaintiff guessed that there could have been a hundred bushels. The barley marketed weighed out 58 bushels and a few pounds. He said he saw hogs eating barley south of the barn.

On behalf of plaintiff Clyde Smith testified that he examined corn in the driveway of the barn and in a bin on the land in question and described corn which he observed. He was permitted to give his opinion that all corn observed was 1944 corn. He stated however that he was not certain in his response.

This brief review, we think, presents a fair reflection of the evidence of plaintiff having probative value on the question of crops produced out of which he was entitled to one-third as rent.

This evidence at most leads but to a conjecture that plaintiff did not receive all of the corn and barley that was coming to him as rent. There is no competent evidence of removal of either corn or barley by the defendant. There is evidence that a small quantity of corn, not to exceed 20 bushels, had run out where it was eaten by defendant's hogs and chickens and evidence that defendant's hogs were being fed barley but none directly as to the place from whence it came.

It is clear that if plaintiff had a right of recovery of rent out of corn and barley that right has not been established by his evidence.

We think however that plaintiff's evidence along with the evidence of defendant establishes a right of recovery in some amount. Defendant testified that in 1944 he raised 79 acres of corn and that he put in the crib as rent 425 bushels of white corn and 220 or 230 bushels of yellow. Taking his minimum estimate we find on his admission that he placed in the crib 645 bushels of corn that year. He also testified that in 1945 plaintiff got 420 bushels of "white corn." So on the testimony of defendant the rent corn for the two years was 1,065 to 1,075 bushels. This was 252 to 262 bushels more than was

shelled out in April 1946. The corn during all of the period was under the exclusive control of defendant and it is reasonably inferable from his evidence that it is his position that all corn placed in the bins and the driveway was shelled out except about 10 bushels which escaped from the bin on account of broken boards and were eaten by his stock.

If this be true, and we think we must so accept it, then defendant should be required to account for at least 252 bushels of corn. The evidence does not indicate clearly whether the shortage was in white or yellow corn or both. Under the circumstances we think it equitable to assume that the shortage was in both and in the proportion that the shortage bears to the total amount produced. This would indicate a shortage of approximately 200 bushels of white corn and approximately 52 bushels of yellow. At the time the corn was sold the white was worth the ceiling price of $1.19 per bushel. The yellow was worth the ceiling price of $1.04 per bushel. Thus the amount of the shortage of corn for which defendant should be and is required to account is $292.08.

There is evidence pointing to a possible shortage of barley but it is so indefinite and uncertain that a finding in this respect cannot be made.

By the terms of the leases it was required that the shelling and marketing of grain was imposed on the defendant. In this respect he failed and plaintiff was required to pay for the shelling and marketing. This he did at an expense to him of $59.50. This amount is a proper charge against the defendant.

The evidence sufficiently establishes that as cash rent plaintiff is entitled to $88.

The amounts found to be due plaintiff growing out of the farm leases and the operation of the farm are, for corn $292.08, for shelling and marketing corn $59.50, for cash rent $88, total $439.58.

By answer and cross-petition defendant claims that he is entitled to recover of and from the plaintiff $495.20

for labor and material in and about the repair and improvement of the buildings, fences, and structures on the land. On these items the evidence is not clear but we think it supports a conclusion that the parties agreed upon a settlement for material furnished before August 1945 for $136. We think the evidence supports a claim for labor prior to August 1945 in the amount of $88, which includes $12 for hauling corn in 1945, which plaintiff agreed to pay. We find that defendant has failed to prove a right of recovery on the balance of the claim set up in his cross-petition. Therefore on his cross-petition defendant is entitled to recover from plaintiff $224.00.

In conformity with a judgment or decree apparently entered following an earlier trial of this case, which was set aside, plaintiff paid defendant $112. This subject is dealt with in the pleadings herein. In an accounting here this must be taken into consideration in an adjustment of accounts and allowance made therefor in favor of plaintiff.

Therefore we find that the total amount due and owing from defendant to plaintiff before adjusting it with the amount owing by plaintiff to defendant is $551.58; that the amount due to defendant from plaintiff before adjustment is $224; and that after adjustment there is due from defendant to plaintiff $327.58.

With regard to the writ of assistance we fail to see how this could properly be the basis of a cause of action in case No. 5293. No objection, however, was made by the defendant. Presumably the parties considered it proper on the basis of the consolidation of the two cases. It was a repetition of an application made in case No. 5278. The trial court must have considered the matter of a writ of assistance foreign to case No. 5293 since, though there was but one journal entry, the journal entry ordered the writ of assistance issued in case No. 5278.

The defendant defended against the application for a writ of assistance in both cases on the ground that he

had a valid lease for one year from March 1, 1946, to March 1, 1947. He contends that his lease was oral but that it was made valid and was taken out of the operation of the statute of frauds by part performance on his part. Plaintiff denies that there was an oral lease or any other kind of lease under which there was any performance at all.

Section 36-105, R. S. 1943, provides: "Every contract for the leasing for a longer period than one year, * * * of any lands, shall be void unless the contract or some note or memorandum thereof be in writing and signed by the party by whom the lease or sale is to be made."

Section 36-106, R. S. 1943, provides: "Nothing contained in sections 36-101 to 36-106 shall be construed to abridge the powers of a court of equity to compel the specific performance of agreements in cases of part performance."

This provision is supported by abundant authority. See Crnkovich v. Crnkovich, 144 Neb. 904, 15 N. W. 2d 66; Taylor v. Clark, on rehearing, 143 Neb. 563, 13 N. W. 2d 621; Caspers v. Frerichs, 146 Neb. 740, 21 N. W. 2d 513; Hackbarth v. Hackbarth, 146 Neb. 919, 22 N. W. 2d 184; Garner v. McCrea, 147 Neb. 541, 23 N. W. 2d 731; Herbstreith v. Walls, 147 Neb. 805, 25 N. W. 2d 409.

Within the meaning of section 36-105 an oral lease, though for only one year, if entered into prior to the beginning of the term, is void under the statute. Thostesen v. Doxsee, 77 Neb. 536, 110 N. W. 319; Kofoid v. Lincoln Implement & Transfer Co., 80 Neb. 634, 114 N. W. 937. Such a lease however may become valid by entry into possession at or after the commencement of the orally agreed term. See Friedhoff v. Smith, 13 Neb. 5, 12 N. W. 820; Thostesen v. Doxsee, *supra;* Kofoid v. Lincoln Implement & Transfer Co., *supra.*

As to the existence of the oral lease for the year from March 1, 1946, to March 1, 1947, defendant said it was agreed upon on August 21, 1945. He said he was to

give one-third rent for grain, $5 an acre for cane, and $1.50 an acre for pasture. He said also that at the time plaintiff made a memorandum of the terms and agreed to prepare and submit in proper form a lease containing the terms. This was never done.

Plaintiff denied that an oral lease was entered into but says in that connection that it was agreed that defendant should have a new lease provided the farm wasn't sold. He said that he wrote the terms of the new proposed lease on a slip of paper.

This all occurred prior to the commencement of the partition proceeding to which defendant was made a party as occupying tenant.

There is nothing in the petition which seeks to have the tenancy of defendant, if he had a tenancy, terminated or to have it in anywise adjudicated. Likewise there is nothing in the decree or journal entry purporting to be an adjudication upon the tenancy.

There having been no adjudication upon any rights of the defendant to possession as lessee in the partition action we fail to see how a writ of assistance to cause him to vacate could properly issue on the decree therein.

On the record here, if the defendant had a lease, he continued to be the lessee after partition. The rule is stated in 47 C. J., Partition, § 933, p. 615, as follows: "While a lease of all or a part of property held in common does not prevent a partition, a partition of leased premises must be subject to the rights of the lessee, * * *." See Henderson v. Henderson, 136 Iowa 564, 114 N. W. 178; Haeussler v. Missouri Iron Co., 110 Mo. 188, 19 S. W. 75, 33 Am. S. R. 431, 16 L. R. A. 220; Albert v. National Outfitting Co., 270 Pa. 183, 113 A. 205; Hanna v. Clark, 204 Pa. 149, 53 A. 757.

This being true we are of the opinion that the writ of assistance was erroneously issued in case No. 5278.

If we are to say that the writ of assistance was properly issued in case No. 5293 then we will be required to say that a party seeking possession of real estate from

a tenant holding over his term, assuming that the defendant is a tenant holding over, may go into equity, and that resort for such purpose to the action of forcible entry and detainer is no longer necessary. It will be remembered that under the pleadings and evidence no question of title but only the right of possession is involved.

The action of forcible entry and detainer is purely a statutory proceeding and original jurisdiction thereof is conferred on justices of the peace. Section 27-1401, R. S. 1943; Blachford v. Frenzer, 44 Neb. 829, 62 N. W. 1101; Armstrong v. Mayer, 60 Neb. 423, 83 N. W. 401. Like jurisdiction may be exercised by county courts (§ 24-502, R. S. 1943) and by municipal courts (§ 26-119, R. S. 1943), but district courts have no original jurisdiction in such cases. Armstrong v. Mayer, *supra.*

It becomes clear then that plaintiff, for want of jurisdiction in the district court, was not, in case No. 5293, entitled to a writ of assistance or a decree determining the right of possession as between the plaintiff and defendant to the lands in question.

It is true that the question has not been raised by the parties, but even if they had agreed to confer jurisdiction upon the district court still that court would have been without jurisdiction to determine the question thus presented.

In Armstrong v. Mayer, *supra,* this court said: "The fact that the plaintiff appeared in the district court and tried the cause without raising the question of jurisdiction is immaterial, since consent of parties can not confer upon a court jurisdiction of the subject-matter. The judgment of the district court from which this error proceeding has been prosecuted is *coram non judice.*"

We conclude therefore that the district court erred in ordering the issuance of a writ of assistance in either of the consolidated cases.

The decree and judgment of the district court is re-

versed and remanded with directions to dismiss the third cause of action.

The decree and judgment as to the second cause of action is reversed and the cause in that respect remanded with directions to the court to enter judgment in favor of plaintiff and against the defendant in conformity with this opinion for $327.58.

REVERSED WITH DIRECTIONS.