HORTON, GILMORE, McWILLIAMS & COMPANY V. MARTIN C. BLOEDORN ET AL.

FILED SEPTEMBER 26, 1893.    No. 4914.

1. **Partnership**: FIRM PROPERTY: SALE BY INDIVIDUAL: MORTGAGE BY ONE PARTNER TO SECURE FIRM DEBT: CONVERSION. Where there is no sufficient reason for making a sale of the whole of the partnership property, one partner, without consultation with, or consent of, his copartner, cannot sell the firm property. If, however, the firm is insolvent, one partner in the firm name may in a proper case give security on a stock of goods to secure a *bona fide* debt of the firm.

2. **Instructions as to duress** *held* to state the law correctly.

ERROR from the district court of Platte county. Tried below before POST, J.

*Harwood, Ames & Kelly* and *McAllister & Cornelius*, for plaintiffs in error.

*Sullivan & Reeder, contra.*

MAXWELL, CH. J.

On the 14th day of May, 1888, Daniel J. Maher and Martin Maher were engaged as a copartnership, under the firm name of D. J. Maher & Co., in the business of retail dealers in general hardware at Platte Center, Nebraska, and were indebted to the plaintiffs, Horton, Gilmore, Mc-Williams & Co., in the sum of $1,201.11. At about 2 o'clock P. M. on that day one Van Brunt, as the agent of the plaintiffs, applied to the defendants at their place of business in Platte Center for the payment or security of plaintiffs' claim. Martin Maher, one of the members of the firm, was absent from the town and did not return until the following day; but Daniel J. Maher, who was the member of the firm having principal charge of the general business, was present. After negotiations consuming the entire afternoon, Daniel J. Maher, at about 7 or 8 o'clock in the evening, executed a bill of sale of all the merchandise, stock in trade belonging to D. J. Maher & Co., to the plaintiffs in satisfaction of, or in security of, the plaintiffs' claim, and delivered the same, together with the property intended to be conveyed to Van Brunt, as the agent of the plaintiffs. This property comprised the entire assets of the firm and was not in value in excess of the amount of the indebtedness to the plaintiffs. Van Brunt received of Daniel J. Maher the key to the store in which the property was situated, and immediately went into actual possession of the same, claiming title thereto in the plaintiffs under the bill of sale. The bill of sale was signed by Daniel J. Maher in the name of D. J. Maher & Co.

Afterwards, on the same day, probably about 9 o'clock P. M., Daniel J. Maher executed to the intervenors herein, the Empkie Hardware Company, a promissory note for $800 in consideration of indebtedness from said copartnership to said hardware company, and also executed and delivered in like manner to said Empkie Hardware Company

a mortgage upon the goods and chattels theretofore conveyed to the plaintiffs in error and conditioned for securing the payment of the note. Subsequently, and on the 16th day of May, 1888, the defendant Martin C. Bloedorn, as the sheriff of Platte county, levied, upon all the goods and chattels above mentioned, executions issued upon judgments rendered against the said D. J. Maher & Co. in favor of others of their creditors, and was assisted in such levy by the defendant Israel Gluck. Thereupon the plaintiffs began this action against the defendants Bloedorn and Gluck, to recover damages for the wrongful conversion of the property, the petition being in the usual form in such cases.

The Empkie Hardware Company was permitted to intervene in this action, and it and the defendants Bloedorn and Gluck filed separate answers to the petition, which, however, are substantially alike, and each of which contained two defenses which may be briefly stated as follows: First, that the conveyance and bill of sale of the plaintiffs were void because they were executed by D. J. Maher without the actual knowledge, consent, or concurrence of his partner, who was then temporarily absent from Platte Center, and that they had for that reason on the second day thereafter been expressly repudiated and attempted to be rescinded by the said Martin Maher; and second, that the bill of sale and transfer were void because they had been obtained from Daniel J. Maher by means of duress, it being alleged that Van Brunt, in order to obtain the same, said to said Daniel J. Maher that the latter had been guilty of a criminal offense in incurring of the indebtedness in consideration for which the same was given, and in having given the plaintiffs a check for the sum of $700 upon a bank in which Maher or Maher & Co. had no moneys, and in making false property statements to plaintiffs upon which plaintiffs had been induced to sell and deliver goods to the firm upon credit, by means of which Maher had become lia-

ble to arrest and imprisonment in the penitentiary, and that unless he immediately executed and delivered to the plaintiffs the bill of sale, and delivered to Van Brunt, for the plaintiffs, possession of the property, he, Maher, would be arrested and prosecuted for the alleged criminal offenses, and convicted thereof, and sent to the penitentiary. The court, at the conclusion of the trial, instructed the jury that Maher, under the circumstances, as managing partner, had authority to convey the property in controversy to the plaintiffs, for and in the name of D. J. Maher & Co., either to satisfy or secure the indebtedness of said firm to the plaintiffs, providing that the transfer was in good faith and without any intent to hinder, delay, or defraud the other creditors of said firm or his copartner, Martin Maher, of which there was no allegation or proof. So that this feature of the case may be regarded as having been disposed of by the court, and not to have been considered by the jury, and may be properly laid out of consideration in this court. The bill of sale and transfer to the plaintiffs, in other words, are, for the purpose of this argument, to be treated as valid unless the same are subject to be avoided by reason of the alleged duress.

On the trial of the cause the court instructed the jury as follows:

"1. That said D. J. Maher, as managing partner, had authority to convey the property in controversy to plaintiffs for and in the name of D. J. Maher & Co. either to satisfy or secure the indebtedness of said firm to plaintiffs, providing said transaction was in good faith and without any intent to hinder, delay, or defraud the other creditors of the firm or his copartner, Martin Maher, and cannot be set aside or annulled on the sole ground that the said Martin Maher was not present and did not personally join in, or consent to, such conveyance.

"2. If plaintiffs have any cause of action in this case it is against both defendants Bloedorn and Gluck for the

Horton v. Bloedorn.

full amount of their, plaintiffs', interest in the property in controversy.

" 3. The instrument, by virtue of which plaintiffs claim, purports to be a bill of sale and is in due form of law, and if executed and accepted in good faith as explained in the last paragraph hereof will entitle them to recover.

" 4. You are charged, however, that if the written conveyance referred to was procured from said D. J. Maher by means of duress it would not be in good faith as the term is here used, but on the contrary would be voidable; that is, the said D. J. Maher and Martin Maher might in such case disaffirm the contract in question by any act which would clearly indicate an intention on their part to disaffirm and repudiate the aforesaid contract; and a notice to Mr. Van Brunt on the 16th day of May following the conveyance to plaintiffs that they elected to disaffirm said contract would be sufficient evidence of a disaffirmance, provided that you find that said contract was procured by duress as here explained.

" 5. The burden of the proof is upon the defendants upon the question of duress; that is, the presumption of law is that the conveyance of the property to plaintiffs was the voluntary act of said D. J. Maher, hence in order to find that said conveyance was procured by duress the defendants must satisfy you by proof and a preponderance of evidence that at or a short time previous to the execution thereof plaintiffs' agent or attorney had threatened said D. J. Maher with arrest and prosecution for an alleged crime, and that the threats so made, if any were in fact made, must have been of such a character as to naturally overcome the mind and will of a person of ordinary firmness and deprive him for the time being of the power of mind and will to resist the demand by the person making such threats.

" 6. You are also charged that the threatened injury, in order to amount to duress, must be immediate. By a mere threat to prosecute the witness Maher at some indefinite

time in the future, particularly if he, Maher, at the time knew the person making such threat had no present means of carrying it into execution by actually taking him into custody, and he still had within his own knowledge the power and opportunity to make a defense to such threatened prosecution, the contract in question cannot be avoided, set aside, or disaffirmed on the ground that it was procured by duress.

" 7. There is still another question of fact in this case. You have noticed that evidence has been offered tending to prove that the instrument of conveyance executed by D. J. Maher, for and in the name of D. J. Maher & Co., was intended merely as a security for the amount due and owing plaintiffs—in short, that, according to the intention of the parties, it was in effect a mortgage only, and you are required to find whether it was intended as an absolute sale of the property conveyed to plaintiffs or merely a security.

" 8. If you find from the evidence that the agreement between D. J. Maher and Van Brunt on the 14th day of May, 1888, was that plaintiffs should take possession of the goods conveyed and satisfy their claim of $1,201 and turn over or account to D. J. Maher & Co. or their creditors any balance remaining, the transaction would in law be merely a mortgage and not a sale."

In our view, one partner, where there is no sufficient reason for making the sale, cannot sell the whole firm property without consultation with or consent of his copartner. If, however, the firm is insolvent, one partner may, in a proper case, sell or execute a mortgage upon the stock to secure a *bona fide* debt of the firm. In *Sullivan v. Smith,* 15 Neb., 476, this rule was applied to a conveyance of real estate where one of the partners had absconded. This question seems to have been fairly submitted to the jury.

There was some testimony tending to show duress, and it thus became a question of fact for the jury. The instructions on that question submit the question fully and

fairly and the verdict is not against the weight of evidence.
There is no error apparent in the record and the judgment is

AFFIRMED.

NORVAL, J., concurs.

POST, J., took no part in the above decision.