TRUMP, INC., A NEBRASKA CORPORATION, APPELLEE, V. SAPP BROS. FORD CENTER, INC., APPELLANT.

317 N.W.2d 372

Filed March 19, 1982. No. 43697.

Theodore L. Kessner of Crosby, Guenzel, Davis, Kessner & Kuester for appellant.

R. David Garber of Garber & Batt for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, and HASTINGS, JJ.

HASTINGS, J.

The defendant, Sapp Bros. Ford Center, Inc., has appealed from a money judgment rendered by the District Court in an accounting action brought by the plaintiff, Trump, Inc. Sapp's assignments of error are in general terms, but essentially it argues that the equitable remedy of accounting was not proper under the facts of the case and that the evidence failed to support the findings of the trial court of the existence of a binding agreement between the parties.

Trump manufactures an aircraft deicer which is used solely at airports to wash snow and ice off the wings of aircraft before takeoff. The deicer is constructed and mounted upon a Ford C-800 truck chassis which since about 1974 has been purchased from Sapp. The agreement made between the two parties was that Trump would pay Sapp for the trucks on the basis of $400 over factory invoice price. Each truck would be ordered to specifications and Trump would be given an approximate price over the telephone. The federal excise tax was included in the basic invoice price of the truck.

Sometime in 1977 it was learned that effective January 13, 1977, the Internal Revenue Code exempted from the excise tax the sale of vehicles for off-highway uses. In order for the manufacturer, in this case the

Ford Motor Company, to obtain a rebate of the tax previously paid, it was necessary for it to prove to the federal government that it had not included the tax in the price charged for the truck, or had repaid the tax to the ultimate consumer or had obtained the written consent of the ultimate consumer to the allowance of the credit or the making of the refund. 26 U.S.C. § 6416(a)(1) (A), (B), (C) (1976). According to *Rothman v. District Director of Int. Rev. Serv. of U.S.*, 483 F.2d 1079, 1080-81 (9th Cir. 1973), "The enactment of § 6416(a) was directed toward the prevention of any unjust enrichment flowing to a taxpayer who has collected excise taxes for the government, but has at the same time passed the economic burden of the taxes on to his customers in the form of higher prices. In order for the taxpayer to qualify for a refund of an illegally collected excise tax, he must provide the government with written authority from the person or consumer who actually paid the tax."

It was discovered that the vehicles purchased by Trump qualified for this rebate. Following an inquiry, Sapp informed Trump that it would get in touch with the Ford division office about applying for refunds on those purchases. This led to the filling out of the applications which included Trump's consent to the granting of the rebate to Ford. After several calls by Trump to Sapp inquiring about the rebates, and a direct inquiry by Trump with the Ford Motor Company, it was learned that Sapp had in fact received a refund from Ford some 6 months earlier. Finally, Trump received a check from Sapp in the amount of $8,176.90 representing rebates of taxes on six trucks.

Linda Wostrel, a vice president of Trump, testified she had analyzed all of the purchase orders and invoices furnished to her by Sapp covering the purchase of trucks upon which excise taxes had been refunded. According to her, the total amount of excise taxes that had been rebated to Sapp equaled $37,649.44. Of this amount, $8,176.90 had been refunded to Trump in cash

and $10,258 had been applied as a credit in favor of Trump. This left a total of $19,214.54 in excise taxes which had been rebated to Ford and refunded to Sapp, but which had not been passed on to Trump. Actually, the president of Sapp Bros., H. Dean Sapp, did not quarrel too much with that figure.

Walter Thornton-Trump, the president of Trump, Inc., testified that he based his claim for a refund on the rebated excise taxes on "the agreement that we had that the excise tax refund there was due to us." He stated that this agreement was made in late 1977 when Dean Sapp told him that he would help Trump check with the Ford district office to find out what was needed to be done to apply for refunds for Trump. Sapp also admitted that Trump had in fact been refunded excise taxes in the amount of $8,176.90 and that he, Sapp, had acknowledged in writing the receipt of excise tax rebates from Ford Motor Company in the amount of $16,455.66 covering vehicles sold to Trump. This same writing indicated that those rebates would be applied against purchases pending on behalf of Trump. Apparently, $10,258 of that credit is the amount referred to in Linda Wostrel's testimony.

In order to consider Sapp's claim that Trump was not entitled to the equitable remedy of an accounting, it is necessary to examine the pleadings. In its petition, Trump alleged the purchase of the trucks, the payment of excise taxes within the purchase price, the rebate of the excise taxes to Sapp as provided by the Internal Revenue Code, and the withholding of a portion of those refunds from Trump. Sapp alleged in its answer that after learning of the tax exemption, it thereafter quoted purchase prices to Trump without the inclusion of such taxes; and as to those taxes which it had collected and thereafter received refunds thereof, it had, from time to time, solely for the purpose of good will, refunded a portion of those taxes to Trump.

The petition contains no allegation of a fiduciary or trust or confidential relationship, a complicated series

of accounts, nor the inadequacy of a remedy at law. Normally, one or more of these allegations is necessary to plead a cause of action in accounting. In *Dickerson v. Surety National Farm Loan Ass'n*, 127 Neb. 67, 71, 254 N.W. 679, 681 (1934), we said: "Originally, the basis of equity jurisdiction over matters of accounting was necessity for a discovery, but later authorities have added two other grounds, viz.: The complicated character of the accounts and the existence of a fiduciary or trust relation. 1 C.J. 613. We think the real basic reason for equitable jurisdiction is inadequacy of remedy at law." See, also, *Corn Belt Products Co. v. Mullins*, 172 Neb. 561, 110 N.W.2d 845 (1961); *Schmidt v. Henderson*, 148 Neb. 343, 27 N.W.2d 396 (1947).

However, Sapp neither demurred to the petition nor objected in its answer to the claim for equitable relief. "'"Where the party, having the right to object, voluntarily submits to the jurisdiction of a court of equity, the cause will be retained for trial on its merits and the proper relief awarded."'" *Linville v. Kowalski*, 149 Neb. 402, 407, 31 N.W.2d 281, 284 (1948). "It is the general rule that if a court of equity has properly acquired jurisdiction in a suit for equitable relief, it may make complete adjudication of all matters properly presented and involved in the case and grant relief, legal or equitable, as may be required and thus avoid unnecessary litigation." *Kuhlman v. Cargile*, 200 Neb. 150, 156, 262 N.W.2d 454, 458 (1978).

Sapp for the first time raised its objection to equity jurisdiction in its motion to dismiss made at the close of the plaintiff's case in chief. Its grounds for that motion were that there was no basis in the record for the invoking of equity jurisdiction and the granting of an accounting. However, where the proof fails to establish a right to equitable relief, the court will retain jurisdiction for the purpose of administering complete relief between the parties with respect to the subject matter. *Hull v. Bahensky*, 196 Neb. 648, 244 N.W.2d 293 (1976), *overruling Gillespie v. Hynes*, 168 Neb. 49, 95 N.W.2d

457 (1959). Sapp's first claim of error is without merit.

Trump's proof in the trial court was directed toward proving an agreement to receive the rebated taxes. Sapp devotes a major portion of its brief on appeal to this issue. The trial court found generally for Trump without giving a basis for this finding. Strangely enough, in its brief, Trump rejects the contract theory and insists that the issues were framed and tried upon the basis of entitlement to the refund by virtue of § 6416(b). We do not agree. Section 6416(b) simply is not applicable for reasons we deem unnecessary to explain for the purposes of this opinion. Trump may have a legitimate claim under § 6416(a), but, if so, it may very well have waived the same. However, Trump's protestations to the contrary notwithstanding, we believe that the issue tried was one in contract. The issues as framed in the trial court, and upon which the cause was tried, are binding upon the parties in the case on appeal to this court. *Foster v. City of Lincoln*, 107 Neb. 404, 186 N.W. 317 (1922). The rule requiring agreement between pleadings and proof is not applicable where the issue was tried without objection by either party. *Hackbarth v. Hackbarth*, 146 Neb. 919, 22 N.W.2d 184 (1946).

In the final analysis it is apparent that this case was tried as a law action on the theory that an agreement existed between Trump and Sapp calling for the refunded excise taxes to be paid over to Trump by Sapp. In light of the various rules cited above regarding the powers of a court of equity over law actions, we conclude that there is sufficient evidence on the record to sustain the findings of the District Court. Its judgment is affirmed.

AFFIRMED.