MARY E. TRUMAN, APPELLEE, V. CLAUDE JOE MARTIN,
APPELLANT.
321 N.W.2d 420

Filed July 2, 1982. No. 43905.

Thomas H. DeLay and Mueting & DeLay, for appellant.

Jewell, Otte, Gatz, Collins & Domina, for appellee.

Heard before KRIVOSHA, C.J., and HASTINGS, J., and COADY and FAHRNBRUCH, D. JJ., and RONIN, D.J., Retired.

FAHRNBRUCH, D.J.

Plaintiff, Mary E. Truman, brought an equity action in the Pierce County District Court to establish that a joint venture and partnership existed between her and the defendant, Claude Joe Martin, and for an accounting.

The trial court found that a joint venture and partnership did exist from January 1, 1975, to February 5, 1977, in regard to a restaurant business, and en-

tered judgment for the plaintiff on the accounting. The trial court found that there was no partnership or joint venture between the parties in regard to other businesses of the defendant. Defendant appealed. We affirm.

In equity actions, it is the duty of the Supreme Court to try the issues of fact de novo on the record and to reach an independent conclusion thereon without reference to the findings of the District Court. *Weiss v. Meyer,* 208 Neb. 429, 303 N.W.2d 765 (1981); *Layher v. Dove,* 207 Neb. 736, 301 N.W.2d 90 (1981).

The parties judicially admitted in the pleadings that effective January 1, 1975, they entered into an oral joint venture and partnership agreement for the leasing and operation of a restaurant known as "Pete's Truck Stop." The agreement provided that everything was to be "split down the middle." It is undisputed that the parties operated the restaurant as a joint venture and partnership until May 27, 1975, when the parties entered into a written agreement settling their "financial differences and personal obligations." Pursuant to the written settlement agreement the defendant paid to the plaintiff the sum of $500.

Whether the settlement agreement on May 27, 1975, was rescinded by the parties and the joint venture and partnership reinstated is the first issue to be resolved.

" 'The cancellation, abandonment, or rescission of a written contract may not only be written but it may also be oral. Moreover, an implied agreement to rescind a contract may be given effect, and the assent of the parties to rescission may be shown by their acts or conduct, and the surrounding circumstances. Accordingly, in determining whether a rescission took place, the courts look not only to the language of the parties, but to all the circumstances.' " *Davco Realty Co. v. Picnic Foods, Inc.,*

198 Neb. 193, 199-200, 252 N.W.2d 142, 147 (1977), quoting 17A C.J.S. *Contracts* § 388 (1963).

The record establishes that the parties in this case had a cohabital relationship beginning in March 1974. Prior to January 1, 1975, the parties entered into an oral joint venture and partnership arrangement to operate "Pete's Truck Stop." Between January 1, 1975, and May 27, 1975, the defendant made all management decisions and plaintiff supplied her labors in furtherance of the business in accordance with the oral agreement of the parties. The cohabital relationship between the parties also terminated on or about May 27, 1975, when plaintiff moved into her daughter's home where plaintiff lived for between 10 days and 2 weeks.

Defendant testified that during the 10-day to 2-week period plaintiff was living with her daughter, defendant visited the home only to visit the plaintiff's daughter and granddaughter. He further testified that nothing was ever said about resuming the personal or business relationship between himself and the plaintiff. Plaintiff testified that defendant came to the daughter's home and asked plaintiff to return the settlement money he had given her, asked her to return to him, and that everything would be the same as before in regard to their personal and business relationships. Plaintiff testified that she resumed the personal and business relationship and turned over to defendant $450 to $460 of the $500 settlement she had received from defendant, the balance having been spent for groceries. Plaintiff's testimony was corroborated in substance by her eldest daughter and in part by a younger daughter, both of whom testified that defendant had visited plaintiff on numerous occasions while plaintiff was living in her daughter's home and that defendant had urged plaintiff to return to the same relationship that defendant and plaintiff had prior to May 27, 1975. The trial court by its judgment accepted

plaintiff's version of the facts. "On an appeal from a judgment in equity, when credible evidence on material questions of fact is in conflict, the Supreme Court will consider the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the other." *Weber v. Swenson,* 207 Neb. 35, 42, 295 N.W.2d 688, 692 (1980).

It is undisputed that plaintiff resumed her cohabital relationship with defendant and performed the same labors in the restaurant that she had performed between January 1, 1975, and May 27, 1975. Plaintiff testified that she was to receive a salary for her work, that checks were issued but that the proceeds of the paychecks were turned over to the defendant. The defendant testified that major portions of the checks were turned over to him but claimed that it was for board and room of plaintiff. Other than the fact that defendant had removed plaintiff's name from the business account and from a note, "Pete's Truck Stop" was operated in the same manner as it had been between January 1, 1975, and May 27, 1975, until February 5, 1977, when the defendant ousted plaintiff.

We find that the settlement agreement dated May 27, 1975, was rescinded not only by the language of the parties but by their conduct and all the circumstances surrounding this case, and affirm the trial court in finding that a joint venture and partnership arrangement continued from January 1, 1975, to February 5, 1977, between the parties in regard to the restaurant business.

Subsequent to opening the restaurant business, the defendant also operated a bar, a tree trimming business, and an irrigation supply business. The trial court found that the plaintiff failed in her burden of proof to show that these three businesses were in partnership or a joint venture. Unless the agreement prohibits it, there is nothing inherently wrong

with a partner engaging, in good faith, in enterprises in his own behalf other than the line of trade or business in which the partnership is engaged. His partners are not entitled to share in the profits from such enterprises. See 68 C.J.S. *Partnership* § 106 (1950). There is no credible evidence that the partnership with plaintiff suffered on account of defendant's other business activities or that the agreement between the parties prohibited such outside activities. After a careful review of the record, we agree with the trial court that the plaintiff failed to prove that the bar and the tree trimming and irrigation supply businesses were included in the joint venture and partnership agreement.

We turn to the matter of the accounting in regard to the restaurant. Neb. Rev. Stat. § 67-340 (Reissue 1976) provides in substance that upon dissolution of a partnership, the liabilities shall rank in order of payment as follows: (1) Payment to creditors other than partners; (2) Payment to partners other than for capital and profits; (3) Payment to partners in respect to capital; and (4) Payment to partners in respect to profits.

The trial court set over all the assets of the partnership to the defendant subject to payment of liabilities payable to creditors other than the partners. In requiring the defendant to pay the liabilities of the partnership to creditors other than the partners, the trial court thereby complied with the first step of the statute. Resolution of steps two and three depends almost entirely upon the credibility of the parties' testimony as to the amount contributed in either category by each of the parties, the purpose of the contribution, and the source of the money. There is evidence from which it can be concluded that each of the parties contributed virtually the same amount in regard to combined categories two and three and any difference was offset by the trial court setting over the restaurant assets and liabilities other than

to partners to the defendant. There being a conflict on a material fact and the trial court having had the advantage of hearing and seeing the witnesses, we accept the trial court's findings in that regard. *Weber v. Swenson,* 207 Neb. 35, 295 N.W.2d 688 (1980). The trial court found that there was a "wash" in categories two and three, and we so find. Although the trial court did not specify definite amounts in categories two and three, the finding of a "wash" in those categories does not affect the ultimate amount each partner receives.

While the records of the operation of the restaurant are not as detailed as they might be, the evidence is sufficient to establish that the profits of the operation for the period of January 1, 1975, to February 5, 1977, were $30,626.99 which should be evenly divided between the partners. The trial court entered judgment in favor of the plaintiff and against the defendant in the amount of $15,313.50 and impressed a lien on the assets of the restaurant in that amount.

The trial court's findings on both the law and the facts were correct in the ultimate results and its judgment is affirmed.

AFFIRMED.