JIM LUSTGARTEN AND JOHN BATES, APPELLANTS, V. TERRY JONES, BOTH INDIVIDUALLY AND AS PRESIDENT OF JONES OIL COMPANY; GARY ERNST; AND JONES OIL COMPANY, A NEBRASKA CORPORATION, APPELLEES.

371 N.W.2d 668

Filed August 2, 1985.   No. 84-365.

Roger C. Lott of Muffly, Lott & Oglesby, for appellants.

Robert B. Creager of Berry, Anderson, Creager & Wittstruck, for appellees.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired.

SHANAHAN, J.

Jim Lustgarten and John Bates appeal the judgment of the district court for Lancaster County which dismissed an action brought against Terry Jones, Gary Ernst, and Jones Oil Company for an accounting. We affirm.

As general background, in 1979 Lustgarten and Bates, as early entrants into the Nebraska alcohol-fuel market, rented facilities from Jones Oil. Lustgarten and Bates lacked business contacts and finances for development of a gasohol market, while Jones had experience in the petroleum industry and contacts which might be beneficial in marketing gasohol. Ernst was a business associate of Jones.

After conferences concerning their business arrangement, Bates, Lustgarten, Jones, and Ernst, on March 16, 1979, signed an "Agreement to Form a Corporation," which in pertinent part provided:

> THE UNDERSIGNED each hereby subscribes to the amount of shares hereinafter stated of a Nebraska corporation to be named by the agreement of the parties hereto holding 500 shares of $10.00 par value common stock.

The undersigned further agree to pay to the corporation the sum of $10.00 per share or its equivalent in such installments and at such times as shall be determined by the Board of Directors of the corporation and on the condition that the corporation, by and through its Board of Directors, adopt a plan for the issuance of capital stock which complies with the provisions of Section 1244 of the Internal Revenue Code as amended from time to time. The corporation shall be established for general purposes to include the sale of alcohol.

The undersigned agree to purchase shares in the above corporation in the following amounts:

| | |
|---|---|
| Gary H. Ernst | 40 percent or 200 shares |
| Terry Jones | 40 percent or 200 shares |
| John Bates | 10 percent or 50 shares |
| Jim Lustgarden [sic] | 10 percent or 50 shares. |

The parties to this agreement agree that any salaries drawn shall be based upon the percentage of ownership and that no draws for salary shall be taken which would reduce current assets to an amount less than twice the current liabilities of the corporation.

The March 16 agreement also provided that the new corporation would lease land and facilities at gasoline pipeline terminals. In furtherance of business to be conducted by the new corporation, Lustgarten and Bates prepared a marketing plan. Ernst and Jones contacted various major oil companies to determine feasibility of constructing alcohol storage facilities at pipeline terminals.

There was limited success in obtaining terminal storage facilities. Continental Oil Company, contacted by Jones, was willing to lease a storage site only if there was a substantial business entity to conduct operations. Conoco declined to enter into any lease with a newly formed, undercapitalized corporation such as that proposed by the parties. However, Conoco was willing to deal with Jones Oil or any other corporation having sufficient financial backing. Meanwhile, Lustgarten and Bates had little success in locating a supply of alcohol for sale through the new corporation and felt they were not being informed about contacts with owners of pipeline

terminals. Ernst and Jones concluded that Lustgarten and Bates had little knowledge about gasohol, other than that possessed by the general public.

At a meeting of the parties on May 22, Ernst and Jones informed Lustgarten and Bates that contacts with the pipeline owners had been unsuccessful due to the proposed corporation's lack of finances. Jones, president of and major shareholder in Jones Oil, explained that Conoco was willing to enter a lease with Jones Oil regarding a terminal facility, since Jones Oil had a sound financial base. Jones was reluctant to involve Jones Oil in the speculative gasohol market. After discussing the situation the parties concluded that the March 16 agreement could not be carried out as contemplated. On an unused part of the second page of the parties' two-page March 16 agreement, the parties placed and signed a handwritten agreement as follows:

Agreement dated 5/22/79

A new agreement is made this 22nd day of May 1979 by and between Terry L. Jones, Gary H. Ernst, Jim Lustgarten and John Bates to void the forgoing [sic] agreement in each and every part and to substitute a new agreement as follows: This new agreement completely and forever voids and cancels the agreement to "Form a New Corporation" signed on the 16 day of March 1979, by the aformentioned [sic] parties. It is understood that there is or will be 100,000 shares issued and outstanding.

In consideration of transferring the following shares of stock in a Nebraska corporation named Jones Oil Company Inc., the agreement to "form a New Corporation" is here by void and cancelled — Gary H. Ernst 6714 shares, John Bates 338 shares, and Jim Lustgarten 338 shares.

It is hereby agreed that the above named persons will be hired by Jones Oil Company and paid at the rate of 5 % of the gross margin on alcohol sales. However if employment is terminated, the stock may be repurchased by Terry L. Jones for a value of 3 times earnings for the previous 12 months on a 1st right of refusal basis.

As a result of the May 22 agreement and based upon already

issued capital stock of Jones Oil, Lustgarten and Bates each would receive one-third of 1 percent of the capital stock of Jones Oil.

The day after signing the handwritten agreement, Lustgarten and Bates sought to sell Jones their prospective stock in Jones Oil for $30,000, in accordance with the right of first refusal contained in the May 22 agreement. Jones declined to purchase the prospective shares of Lustgarten and Bates. The parties subsequently met and discussed possible employment of Lustgarten and Bates by Jones Oil. During the course of such meetings, according to Bates and Lustgarten, the parties agreed to reinstate the agreement of March 16. Ernst and Jones deny any agreement that the March 16 contract be reinstated. The parties severed their business relationship. Afterwards, Jones Oil entered into an agreement with Conoco to store alcohol at Conoco's pipeline terminal in Lincoln, and presently sells gasohol at wholesale and retail. Ernst and Jones, as individuals, are not involved in any sale of gasohol.

Lustgarten and Bates filed suit against Jones, Ernst, and Jones Oil based on the agreement of March 16, 1979, and claimed that Lustgarten and Bates were induced to "void" their agreement to form a corporation as a result of "business pressure and duress" exerted by Jones, Ernst, and Jones Oil in the form of "substantial difference in economic position and business experience" on the part of Lustgarten and Bates. As further alleged by Lustgarten and Bates: "The Agreement to Form a Corporation gives rise to a fiduciary relationship and fiduciary duties among the parties," and the May 22 agreement should be set aside as a product of duress exerted in the form of "economic pressure and difference in business position and standing." Lustgarten and Bates then prayed for a judgment and accounting by Jones, Ernst, and Jones Oil. Jones, Ernst, and Jones Oil in their answer admitted that the agreement of May 22 canceled the contract of March 16.

The district court dismissed the petition of Lustgarten and Bates, who, on appeal, contend their agreement of May 22 is void so that the original agreement of March 16 became reinstated and was an enforceable contract between the parties.

In order to determine whether Lustgarten and Bates have

properly invoked equity jurisdiction, we must examine the pleadings. See *Trump, Inc. v. Sapp Bros. Ford Center, Inc.*, 210 Neb. 824, 317 N.W.2d 372 (1982).

In substance, Lustgarten and Bates seek an accounting as a result of their contractual relationship with Jones and Ernst. In Nebraska an action for an accounting may, under one set of circumstances, be brought as an action at law and, under another, as an action in equity. *Schmidt v. Henderson*, 148 Neb. 343, 27 N.W.2d 396 (1947). Generally, in order to be entitled to the equitable remedy of an accounting, it is necessary to show a fiduciary or trust relationship between the parties or a complicated series of accounts making the remedy at law inadequate. See *Trump, Inc. v. Sapp Bros. Ford Center, Inc., supra*. The promoters of a corporation occupy a relationship of trust and confidence toward the corporation to be formed, as well as to each other, and the law requires the promoters to act with good faith as required from other fiduciaries. See *Henderson v. Joplin*, 191 Neb. 827, 217 N.W.2d 920 (1974). Lustgarten and Bates, therefore, have invoked equity jurisdiction. See *Trump, Inc. v. Sapp Bros. Ford Center, Inc., supra*.

The claim of Lustgarten and Bates is founded on existence of a fiduciary relationship resulting from the agreement of March 16 regarding formation of a corporation. In view of the cause of action set forth in the petition, if there is no enforceable agreement of March 16, a court cannot order an accounting in this case. Therefore, the fundamental issue is whether the parties have rescinded their agreement of March 16.

In equity actions it is the duty of the Supreme Court to try issues of fact de novo on the record and to reach independent conclusions therefrom without reference to findings of the district court. *Truman v. Martin*, 212 Neb. 52, 321 N.W.2d 420 (1982).

" 'The cancellation, abandonment, or rescission of a written contract may not only be written but it may also be oral. Moreover, an implied agreement to rescind a contract may be given effect, and the assent of the parties to rescission may be shown by their acts or conduct, and the surrounding circumstances. Accordingly, in

determining whether a rescission took place, the courts look not only to the language of the parties, but to all the circumstances.' "

*Id.* at 53, 321 N.W.2d at 422. See, also, *Davco Realty Co. v. Picnic Foods, Inc.*, 198 Neb. 193, 252 N.W.2d 142 (1977).

On rescission of a contract, rights and duties which have accrued under the rescinded contract are terminated and nullified. As we expressed in *Davco Realty Co. v. Picnic Foods, Inc., supra* at 201, 252 N.W.2d at 148:

"Generally rescission must be exercised in toto and is applied to the contract in its entirety with the result that what has been done is wholly undone and. no contract provisions remain in force to bind either of the parties." [Citation omitted.]

"Where a contract has been rescinded by mutual consent, the parties are, as a general rule, restored to their original rights with relation to the subject matter, and they are entitled to be placed in status quo as far as possible. All rights under the rescinded contract are terminated, and the parties are discharged from their obligations thereunder." [Citations omitted.]

Rescission of a contract by a subsequent agreement of the parties requires as much a meeting of the parties' minds as does making a contract. See *Utilities Ins. Co. v. Stuart*, 134 Neb. 413, 278 N.W. 827 (1938). By its express provisions the document signed on May 22 constituted "[a] new agreement" which "completely and forever voids and cancels the agreement to 'Form a New Corporation' signed on the 16 day of March 1979." As a result of their May 22 agreement, the parties manifestly intended a rescission of their March 16 agreement.

Inasmuch as formation of a contract can be prevented by duress exerted upon a party to the contract, likewise, duress may prevent an effective rescission of an existing agreement. However, the burden of proving duress is placed upon the party alleging it. See *Horton v. Bloedorn*, 37 Neb. 666, 56 N.W. 321 (1893). What constitutes duress is a question of law, but existence of duress is a question of fact. See *Meyer v. Guardian Trust Co.*, 296 F. 789 (8th Cir. 1924).

"To be voidable because of duress, an agreement must

not only be obtained by means of the pressure brought to bear, but the agreemeent [sic] itself must be unjust, unconscionable, or illegal. The essence of duress is the surrender to unlawful or unconscionable demands. It cannot be predicated upon demands which are lawful, or the threat to do that which the demanding party has a legal right to do."

*Carpenter Paper Co. v. Kearney Hub Pub. Co.*, 163 Neb. 145, 151-52, 78 N.W.2d 80, 84 (1956). See, also, *First Data Resources, Inc. v. Omaha Steaks Int., Inc.*, 209 Neb. 327, 307 N.W.2d 790 (1981); *Buhrman v. International Harvester Co.*, 181 Neb. 633, 150 N.W.2d 220 (1967). Jones' action characterized by Lustgarten and Bates as duress is not coercion exerted by one party to a contract upon another. Rather, any atmosphere of compulsion attendant to the May 22 agreement emanated from a third person beyond the control of the parties, namely, Conoco's unwillingness to enter a lease with a corporation demonstrating questionable financial responsibility. Additionally, there is no evidence that the May 22 agreement is unjust, unconscionable, or illegal. Seeking to sell stock obtained under an agreement claimed to be the product of duress might be viewed as somewhat inconsistent positions on the part of Lustgarten and Bates, to say the least.

In any event, the record does not support the claim of duress exerted on Lustgarten and Bates. The May 22 agreement between the parties was an effective cancellation or nullification of the agreement entered by the parties on March 16. By virtue of the parties' abrogation of their agreement entered March 16, there was no contract between the parties as a basis of a fiduciary or confidential relationship supporting a claim for an accounting.

The judgment of the district court is correct and is affirmed.

AFFIRMED.