# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2818
_____

Timothy A. Gilkerson

*Plaintiff - Appellant*

v.

Nebraska Colocation Centers, LLC

*Defendant - Appellee*

American Nebraska Limited Partnership; Ralph Edwards Productions, Inc.

*Defendant*s
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: March 8, 2017
Filed: June 21, 2017
_____

Before BENTON, BEAM, and MURPHY, Circuit Judges.
_____

BEAM, Circuit Judge.

Timothy Gilkerson appeals the district court's grant of summary judgment in favor of his former employer, Nebraska Colocation Centers, LLC (NCC), on his

breach of contract and Nebraska Wage Payment and Collection Act claims. For the reasons discussed below, we reverse.

## I. BACKGROUND

On August 22, 2011, NCC hired Gilkerson as its Vice President and General Manager to develop NCC's Information Technology (IT) infrastructure and improve its customer base. Gilkerson has a bachelor's degree in education with an emphasis in business and twenty years of IT experience at companies such as TD Ameritrade, Oriental Trading Company, Gallup, Inc., Farmer's Life Insurance, Mutual of Omaha, and Experian. NCC and Gilkerson entered into a ten-year employment contract (the Contract) in which Gilkerson was responsible for developing technology infrastructure for NCC and closing sales of NCC services. Under the Contract, Gilkerson's base salary was $84,000, he was entitled to 2% of gross sales of products and services sold for the first three years and then 2.5% for the remainder of the contract term, and he was to receive quarterly sales bonuses and a retirement bonus. The Contract also included a "Premature Termination" provision which stated that if NCC terminated him before the end of the ten-year term "without cause," he would receive his remaining salary for the balance of the term, another five years' bonuses, and his full retirement bonus. If NCC terminated him prematurely "for cause," however, he would receive only his unpaid compensation for services already performed. The Contract defined "cause" as "willful misconduct in carrying out Executive's duties which causes economic harm" to NCC or "persistent failure to perform the duties and responsibilities of his employment hereunder; which failure is not remedied by him within 30 days after Executive's receipt of written notice from the Company of such failure."

NCC became dissatisfied with Gilkerson's performance because he was struggling to close sales. NCC's president notified Gilkerson of his unsatisfactory sales performance, and later Gilkerson received an Employee Performance Review

with an "Unsatisfactory" rating for "Achieves Sales Goals" and "Fulfills the terms of his contract." Gilkerson signed the review but noted his disagreement with his sales goal rating. NCC ultimately determined that Gilkerson was not effective as NCC's Vice President and General Manager and announced the hiring of a new Vice President on July 8, 2013. That same day, NCC told Gilkerson that the new employee would be moving into his office and that Gilkerson's job title had been changed to "Director: Field Engineering and Channel Services." On July 15, 2013, the president of NCC met with Gilkerson and presented him with a "Mutual Rescission," which would rescind the Contract, and a "Term Sheet," which set forth the terms of Gilkerson's new employment contract. The Term Sheet stated that Gilkerson's base salary would remain the same ($84,000) and that he would now have the opportunity to earn up to 4% commission for new NCC revenue. The Term Sheet also included a 1% bonus for the first $150,000 billed by NCC each quarter and removed restrictive covenants that were included in the original Contract. However, the Term Sheet did not include a retirement bonus and did not have delineated termination provisions based on cause, both of which were provisions in the Contract.

Gilkerson did not immediately accept the rescission and new terms of employment. He took two days off work to review the new agreement. He consulted with an attorney who advised him not to sign the Mutual Rescission. Gilkerson met with NCC's president on July 17, 2013, to further discuss the agreement. The president criticized Gilkerson's work performance and told him he had a choice: accept the rescission and Term Sheet or be fired for cause. Gilkerson signed the Mutual Rescission and Term Sheet the following day. He worked under the Term Sheet and received six months of pay until he was fired on January 8, 2014. Gilkerson filed suit against NCC on May 30, 2014, in Douglas County District Court alleging breach of contract and violation of the Nebraska Wage Payment and Collection Act. Gilkerson argued that the "Rescission Contract [was] not a valid and enforceable contract because it was signed by [Gilkerson] under duress." He further argued that

NCC breached the Contract by terminating his employment without cause and owed him sales bonuses for two quarters of 2013.

NCC removed the case to federal court and filed a motion for summary judgment. The district court "reluctantly" granted NCC's motion for summary judgment, holding that although "there is, at least, a genuine issue of material fact as to whether the threat of termination would support a claim of duress," there is no evidence that the Mutual Rescission and Term Sheet are unjust, unconscionable, or illegal, required elements to prove duress under Nebraska law. Thus, according to the district court, there was "not enough to void the subsequent rescission." The district court summarily dismissed Gilkerson's Wage Payment and Collection Act claim. In a footnote, the district court noted that because the Wage Payment claim "rest[ed] on the validity of the employment contract and effect of the rescission, [it] need not be addressed separately." Gilkerson now appeals, arguing that the district court erred by (1) misinterpreting Nebraska precedent regarding claims of duress, (2) applying the incorrect standard of review, and (3) dismissing his Wage Payment and Collection Act claim.

## II.    DISCUSSION

### A.    Standard of Review

We review the district court's grant of summary judgment de novo. Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 514 (8th Cir. 2011). Summary judgment is only proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All facts must be viewed in the light most favorable to the nonmoving party. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). The moving party bears the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the movant does

so, the non-moving party must then present evidence showing a genuine issue of material fact. Id. "The non-moving party must substantiate his allegations by 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" Young v. Builders Steel Co., 754 F.3d 573, 577 (8th Cir. 2014) (alterations in original) (quoting Mann v. Yarnell, 497 F.3d 822, 825 (8th Cir. 2007)).

## B.    Duress Claim

In holding that the Mutual Rescission and Term Sheet were not voidable as products of duress, the district court applied the following two-part test: "To be voidable because of duress, an agreement must not only be obtained by means of pressure brought to bear, but the agreement itself must be unjust, unconscionable, or illegal." City of Scottsbluff v. Waste Connections of Neb., Inc., 809 N.W.2d 725, 745 (Neb. 2011) (quoting Carpenter Paper Co. v. Kearney Hub Pub. Co., 78 N.W.2d 80, 84 (Neb. 1956)). "Whether particular facts are sufficient to constitute duress is a matter of law for the court, while the question of whether the facts alleged actually exist is a matter for the fact finder." Anselmo v. Mfrs. Life Ins. Co., 771 F.2d 417, 419-20 (8th Cir. 1985). It is well established that Nebraska uses the above-stated two-part test to determine whether an agreement is voidable as a product of duress. See Lincoln Benefit Life Co. v. Edwards, 45 F. Supp. 2d 722, 750 (D. Neb. 1999); Waste Connections, 809 N.W.2d at 745; Lustgarten v. Jones, 371 N.W.2d 668, 672 (Neb. 1985); First Data Res., Inc. v. Omaha Steaks Int'l, Inc., 307 N.W.2d 790, 793 (Neb. 1981). Thus, the district court correctly stated the rule for duress in Nebraska.

The district court held that "there is, at least, a genuine issue of material fact as to whether the threat of termination would support a claim of duress." We agree and will remand for a determination of this factual issue. The only remaining issue is whether the Term Sheet was, as a matter of law, unjust, unconscionable, or illegal. In making this determination, we consider all relevant circumstances of the case. See

Waste Connections, 809 N.W.2d at 745. In Waste Connections, a waste removal company originally charged the City of Scottsbluff "a $35-per-ton disposal rate." Id. at 734. When the City's contract expired, the company told the City it would charge $42.50 per ton to accept the waste at the transfer station. Id. at 735. However, once Waste Connections learned that another company would be taking over the City's contract in one year, it increased its rate for the City to $60 per ton. Id. at 735-36. There was "no economic justification" for Waste Connections' 41% increase. Id. at 746. The company was "exploiting" the City's vulnerable position to "unjustly enrich itself." Id. Thus, the Supreme Court of Nebraska held that the agreement was unjust and thus voidable as a product of duress. Id. In Edwards, the court held that the agreement in question was unconscionable and therefore voidable because it required the plaintiff to repay a debt he did not owe and sign a document unrelated to his job performance. 45 F. Supp. 2d at 750. In McCubbin v. Buss, 144 N.W.2d 175 (Neb. 1966), the plaintiff signed a cancellation agreement, which terminated a prior stock-purchase agreement, after the majority stockholder threatened to terminate him over disagreements about the stock-purchase agreement. Id. at 178. The court held that the cancellation agreement was void as a product of duress because the majority stockholder "bargained from strength, and the consideration for the discharge of the stock-purchase contract was inadequate." Id. at 179.

Here, the district court held that "[h]ad the revised terms of [Gilkerson's] employment been given to a newly-hired employee, they would certainly be seen as fair, or even generous." However, Gilkerson was not a new employee. Thus, we examine the fairness of the Term Sheet against his original Contract. Under the Contract, Gilkerson had a base salary of $84,000 and received 2% of the gross sales of NCC for the first three years and 2.5% for the remainder of the contract as his bonus. Importantly, Gilkerson could only be fired "for cause" under the Contract. If Gilkerson were terminated "without cause," he would receive his remaining salary due under the ten-year contract, all bonuses due for the following five years, and his full retirement bonus. The retirement bonus under the Contract was equal to 5% or 10%

of NCC's value so long as NCC's EBITDA[1] was equal to or greater than $1,000,000. Under the Term Sheet, Gilkerson's title and employment responsibilities changed, which Gilkerson interpreted as a demotion. Although his salary remained the same, his bonus structure changed appreciably such that it greatly reduced the share of gross sales that he was promised in the original Contract. Under the Term Sheet, Gilkerson received a 1% bonus for the first $150,000 billed by NCC each quarter and had the "opportunity" to earn up to 4% commission for customers whose primary business is the fiberoptic or wireless transport of data. Under the Term Sheet, Gilkerson also lost his retirement package and the potential to receive equity in the company if it were sold, and perhaps most significantly, he became an at-will employee.

Considering all relevant circumstances then existing, Waste Connections, 809 N.W.2d at 745, and viewing the facts in the light most favorable to Gilkerson at this stage in the litigation, Torgerson, 643 F.3d at 1042, we find the Term Sheet unjust and thus voidable as a product of duress given the alleged pressure brought to bear on him to sign the Mutual Rescission and Term Sheet. We specifically take issue with the Term Sheet's provision that made Gilkerson an at-will employee, and indeed NCC ultimately fired him a mere six months later. There was no "economic justification" for requiring Gilkerson to accept an at-will employment agreement, other than it allowed NCC to avoid the provisions of the Contract that were most favorable to Gilkerson. See Waste Connections, 809 N.W.2d at 746. The district court erred by granting summary judgment in favor of NCC.

---

[1]EBITDA is defined in the Contract as "the Company's operating earnings determined in accordance with generally accepted accounting principles, before interest, taxes, depreciation and amortization, but excluding extraordinary gains."

**C.      Nebraska Wage Payment and Collection Act Claim**

Gilkerson also argues that the district court erred by dismissing his Wage Payment and Collection Act Claim.  In his complaint, Gilkerson alleged that NCC owed him over $9,000 for unpaid sales bonuses.  NCC argued that Gilkerson's wage claim was based on benefits conferred under the Contract and thus, moot if the Mutual Rescission and Term Sheet were valid and enforceable.  According to the district court, "both of Gilkerson's claims rest on the validity of the employment contract and effect of the rescission, and need not be addressed separately."  The district court ultimately held that the Mutual Rescission and Term Sheet were valid, and thus the Contract was no longer in effect, and NCC owed Gilkerson no bonuses.  Based on that holding, the district court dismissed Gilkerson's Wage Payment and Collection Act claim.  Because we now hold that summary judgment on Gilkerson's breach of contract claim was improper, granting summary judgment in favor of NCC and dismissing Gilkerson's Wage Payment and Collection Act claim was also improper, and we likewise reverse and remand this claim for resolution on the merits.

**III.   CONCLUSION**

We reverse and remand to the district court for further proceedings consistent with this opinion.

_____