# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-3185

_____

Deborah Rasby

*Plaintiff - Appellant*

v.

James D. Pillen

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 14, 2018
Filed: September 28, 2018

_____

Before LOKEN, GRUENDER, and ERICKSON, Circuit Judges.

_____

LOKEN, Circuit Judge.

In 1994, Deborah Rasby received a ten percent minority shareholder interest when Progressive Swine Technologies ("PST") was formed to provide management services to customers in the swine industry. She also received a five or ten percent interest in five other entities to which PST provided management services. James Pillen owned the remaining shares. Rasby served as PST's accountant until she retired in May 2011. On June 29, 2012, Rasby sold her minority interests to Pillen

for $ 2,350,000.  In this diversity action, Rasby alleges that Pillen's actions created "significant economic duress" that forced her to sell her minority interests.  She seeks restitution of the excess benefit Pillen received and asserts damage claims for fraudulent misrepresentation, securities fraud, denial of corporate opportunity, and breach of fiduciary duty.

After substantial discovery, the district court[1] granted Pillen's motion for summary judgment, concluding that undisputed facts establish no actionable duress, Rasby produced no evidence that the Unit Purchase Agreement was fraudulently induced, and therefore the agreement's mutual release provision bars all her claims.  Rasby appeals.  Reviewing the grant of summary judgment *de novo* and the facts in the light most favorable to Rasby, the non-moving party, we affirm.

I.

Like the district court, we begin with the economic duress issue because, if the Unit Purchase Agreement was not the product of duress and was not fraudulently induced, then the mutual release likely bars Rasby's other damage claims.  On appeal, Rasby argues the district court "erred in deciding multiple factual issues when dismissing Rasby's economic duress claim."  However, under Nebraska law, which governs this diversity action, "[w]hat constitutes duress is a question of law, but the existence of duress is a question of fact."  Lustgarten v. Jones, 371 N.W.2d 668, 672 (Neb. 1985).  Thus, the district court made no error in granting summary judgment if the facts viewed most favorably to Rasby do not constitute economic duress as a matter of law.

---

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

The test under Nebraska law for determining what constitutes duress is well-established:

> To be voidable because of duress, an agreement must not only be obtained by means of the pressure brought to bear, but the agreement itself must be unjust, unconscionable, or illegal. The essence of duress is the surrender to unlawful or unconscionable demands. It cannot be predicated upon demands which are lawful, or the threat to do that which the demanding party has a legal right to do.

Id., quoting Carpenter Paper Co. v. Kearney Hub Pub. Co., 78 N.W.2d 80, 84 (1956). To prove pressure that establishes duress, Rasby must show "application of such pressure or constraint that compels a person to go against that person's will and takes away that person's free agency, destroying the power of refusing to comply with the unjust demands of another." Bock v. Bank of Bellevue, 434 N.W.2d 310, 315 (Neb. 1989). In addition, she must show that the resulting agreement was "unjust, unconscionable, or illegal." "Threatening to take advantage of business exigency to impose unjust demands is commonly referred to as 'economic duress' or a 'business compulsion.'" City of Scottsbluff v. Waste Connections of Neb., Inc., 809 N.W.2d 725, 744 (Neb. 2011). However, "[c]oercion does not include hard bargaining." Id.

Here, Rasby testified that her working relationship with Pillen deteriorated after his daughter joined PST, leading her to retire in May 2011. Before then, in addition to paying Pillen and Rasby salaries, PST had distributed its profits in good years, providing Rasby funds to pay income taxes she owed as a shareholder of this "Subchapter S" corporation. After she retired, Pillen stopped these PST distributions to Rasby, leaving her fearful that she could not afford to pay taxes due on her PST investment. Rasby hired Roger Wells, an experienced Omaha mergers and acquisition attorney, to consider her options. They concluded that sale of the minority interests was her best option.

In an April 2012 letter to Rasby, Pillen stated: "our plan is to liquidate [PST] since it no longer meets our business objectives. . . . [Y]ou will receive ten percent of the net assets available for distribution [which] we anticipate . . . would be just over $50,000." The letter went on to offer to buy Rasby's interests in the other five entities for a total of $1,881,029. Rasby considered this offer substantially below the fair market value of her interests. She and Wells discussed various options, including selling her interests to Pillen, selling to a third party, and suing Pillen for minority shareholder oppression. Rasby ultimately decided to sell her shares, and Wells proceeded to negotiate the Unit Purchase Agreement with Pillen's attorney.

Pillen provided Rasby and Wells the calculations used by the accountant Pillen hired to value Rasby's interests. Rasby considered retaining her own valuation expert but did not do so. She continued to consider other options, including litigation, but ultimately agreed to accept $2,350,000 for her interests in the six entities and repayment of her outstanding loan to one entity. The attorneys exchanged drafts of a purchase agreement. Wells suggested a provision releasing Rasby from future claims by Pillen; the attorneys agreed on the mutual release that became part of the signed agreement. Rasby reviewed the release before signing. She knew it was a complete release of liability on both sides and did not find it ambiguous. However, Rasby testified, she signed the Unit Purchase Agreement because of economic duress:

> Q. And were you concerned that if you did not have cash distributions from these entities, you would not be able to pay those tax obligations?
>
> A. I was beyond concerned. I was terrified. . . . [I]t would eat up within a few years all of our savings, all of our retirement, everything.

Rasby further testified that she had no realistic options: she could not afford shareholder oppression litigation, and she could not sell her interests on the open market "given Jim Pillen's actions" as majority shareholder.

-4-

The district court concluded that Rasby failed to show economic duress as a matter of law:

Rasby has presented insufficient evidence that Pillen placed any unlawful or unconscionable demands on her in connection with negotiating the agreement. Rasby was an experienced businesswoman and accountant and was represented by competent counsel. She had enough business sense to contact an attorney and the record shows she participated in the negotiations for the agreement. She presented a counter-offer making a demand for additional compensation. She discussed the matter with a valuation expert. She was offered an opportunity to obtain an independent valuation, but did not pursue it. Her attorney testified the agreement was neither improper nor unconscionable.

Contrary to her assertions, the record shows Rasby had alternatives to signing the Unit Purchase Agreement, including the pursuit of litigation. . . . The evidence shows she considered and rejected that alternative for what appear to be valid reasons, that is, the cost of bringing the action, the time to resolution, her likelihood of success, and her exposure to a countersuit.

After careful review of the summary judgment record, we agree with the district court's analysis. Rasby proved neither element of actionable economic duress. She claimed severe economic pressure, but it was self-inflicted and not proven to be severe. She voluntarily retired from PST, giving up an $85,000 annual salary. As a small minority shareholder, she had no reasonable expectation that the six entities would continue to pay distributions (dividends) to help her pay taxes, and she failed to present evidence quantifying her financial predicament and its source. She complained that Pillen substantially increased his salary after she retired, but of course that would reduce taxes she would owe for her share of the entities' profits. Nor did Rasby provide evidence that Pillen's actions destroyed her free agency to choose whether to enter into the Unit Purchase Agreement. Minority shareholders

in close corporations frequently face challenges in disposing of their equity interests. But Rasby was a sophisticated professional, represented by an experienced attorney, who considered other options before selling her interests to Pillen in an agreement that included a broad mutual release of claims. See Anselmo v. Mfrs. Life Ins. Co., 771 F.2d 417, 420 (8th Cir. 1985).

Nor did Rasby put forth evidence establishing the other element of actionable economic duress -- that the Unit Purchase Agreement including a mutual release provision was "unjust, unconscionable, or illegal." An unconscionable agreement is one that is "manifestly unfair or inequitable." Myers v. Neb. Inv. Council, 724 N.W.2d 776, 799 (Neb. 2006) (citation omitted). It was neither unfair nor inequitable for Pillen to seek to purchase the interest of a minority shareholder who was no longer actively involved in the enterprise. He offered a substantial sum for shares that Rasby acquired without a cash investment, he disclosed the calculations his advisor used in valuing Rasby's interest, and he invited her to consult her own valuation expert. The valuation of small minority interests in six different entities is likely to lead to differences of opinion. For litigation purposes, Rasby makes the unlikely assertion that she was paid only twenty percent of her interests' fair value. Far more credible is the testimony of Wells, her attorney in the negotiations, that the ultimate price Pillen paid was not unconscionable. We agree with the district court that the Unit Purchase Agreement was not unconscionable as a matter of law.

II.

Rasby argues the Unit Purchase Agreement containing the mutual release of claims is voidable because it was induced by Pillen's misrepresentations that he planned to liquidate PST "since it no longer meets our business objectives," whereas she later discovered that Pillen started a new business -- Pillen Family Farms -- which continued to provide the same business services as PST. Under Nebraska law, to

establish fraudulent inducement warranting rescission of an executed contract, Rasby must show:

> that a representation was made; that the representation was false; that the representation was known to be false when made, or was made recklessly without knowledge of its truth and as a positive assertion; that it was made with the intention that the plaintiff should rely on it; that the plaintiff reasonably did so rely; and that the plaintiff suffered damage as a result.

Bock, 434 N.W.2d at 315 (citation omitted); see Caruso v. Moy, 81 N.W.2d 826, 830 (Neb. 1957). In rejecting this claim, the district court concluded that "Rasby has not identified any positive assertion by Pillen that was known to be false." We agree. First, the statement advising of a plan to liquidate PST was primarily a statement of future intention, made in the context of what Pillen intended to do if Rasby was unwilling to sell her minority interest. There is no evidence that Pillen would not have commenced a formal liquidation proceeding had Rasby not agreed to sell her shares. Second, "liquidation" is an ambiguous term in this context. After acquiring Rasby's shares, a decision to restructure the business as a family business that included his children as owners could be accomplished by formal liquidation of PST, or by change of name and ownership within the existing corporation. Finally, "no longer meets our business objectives" does not necessarily mean getting out of the business; it would include restructuring Pillen's various entities to include new owners, new services, or new ways to provide the services PST had been providing. Thus, the district court correctly determined Rasby failed to show a fraudulent misrepresentation on which she relied in entering into the Unit Purchase Agreement.

### III.

Because Rasby did not enter into the Unit Purchase Agreement as the result of actionable economic duress, and the Agreement was not the result of fraudulent

-7-

inducement, we agree with the district court that the Agreement's mutual release provision bars Rasby's other claims, including the claim that Pillen breached his fiduciary duty to a minority shareholder by forcing Rasby to sell her shares, and the claim that Pillen had previously deprived her of a corporate opportunity by acquiring ownership interests in other entities that provided services to the swine industry without offering Rasby the opportunity to acquire minority interests in those entities.

The judgment of the district court is affirmed.

_____